(10 Misc. Rep. 553.)

MURPHY VARNISH CO. v. CONNELL et al.

(Supreme Court, Special Term, Onondaga County. December, 1894.)

1. FOREIGN CORPORATIONS—RIGHT TO SUE IN NEW YORK.

A traveling salesman of plaintiff, a foreign corporation, obtained from defendants, in New York. an order for goods, and transmitted the order. to plaintiff, at its office in the state where it was incorporated, for approval. The order was approved, and the goods were shipped to defendants. Afterwards defendants, by letters and telegrams, ordered other goods of plaintiff. *Held*, that plaintiff, in making such sales to defendants, was not doing business in New York, within Laws 1892, c. 687, § 15, which provides that no foreign stock corporation doing business in this state without a certificate of authority shall maintain any action in this state "upon any contract made by it in this state until it shall have procured such certificate."

2. SAME—INTERSTATE COMMERCE.

Laws 1892, c. 687, § 15, requiring foreign corporations to obtain a certificate of authority to do business in New York, cannot operate to prevent foreign corporations from selling goods within New York by traveling salesmen without procuring such certificate, as such operation would violate the interstate commerce clause of the constitution of the United States.

Action by the Murphy Varnish Company against Lansing V. Connell and others to charge defendants, as stockholders of the Syracuse Bamboo Furniture Company, for goods sold and delivered to said company by plaintiff. Judgment for plaintiff.

George H. Sears, for plaintiff.

Hancock, Beach, Peck & Devine, for defendants.

McLENNAN, J. The plaintiff is a foreign stock corporation, organized under the laws of the state of New Jersey, and has its principal office and place of business in the city of Newark, in that state. Between the 24th day of September, 1892, and the 21st day of January, 1893, the plaintiff sold and delivered to the Syracuse Bamboo Furniture Company, a domestic manufacturing corporation, having its office and principal place of business at Baldwinsville, N. Y., goods, wares, and merchandise to the amount and value of $303.75, upon four months' credit, as follows: September 24, 1892, $76.45; October 13, 1892, $13.10; November 1, 1892, $70.20; and January 21, 1893, $144. The order for the first bill of goods was given to a drummer or agent of the plaintiff, at Baldwinsville, N. Y., and was by him forwarded to the plaintiff, at its place of business in New Jersey, for approval. The order was approved by the plaintiff, and the goods shipped in the ordinary way. The other goods were ordered by the Syracuse Bamboo Furniture Company by letters or telegrams to the plaintiff, directed to it at its place of business in the state of New Jersey, and in each case the goods were shipped to the bamboo company as before.

It is conceded that, at the dates in question, and for 10 years prior thereto, the plaintiff, through its drummers or agents, was, and had been, engaged in taking orders for its goods throughout

the cities and villages of the state of New York, to be delivered by it in such state. The goods of the plaintiff were manufactured in the state of New Jersey, and the plaintiff had no office or place of business within the state of New York. The defendants, at all of the times mentioned, were directors of the Syracuse Bamboo Furniture Company, and they failed and neglected to file a report as required by chapter 687 of the Laws of 1892, and were in default during the year 1892 and until the 31st day of January, 1893, at which date they filed a report in compliance with the requirements of the statute. All the questions presented by the evidence in this case were decided at this term of court in the case of Adams Furniture Company v. Connell et al. (these defendants) favorably to the plaintiff, except the question which arises from the fact that the plaintiff is a foreign stock corporation, and that, prior to the commencement of this action, it had failed to comply with the requirements of sections 15 and 16 of the general corporation law of this state. The provisions of those sections are as follows:

"Sec. 15. No foreign stock corporation, other than a monied corporation, shall do business in this state without having first procured from the secretary of state a certificate that it has complied with all the requirements of law to authorize it to do business in this state, and that the business of the corporation to be carried on in this state is such as may be lawfully carried on by a corporation incorporated under the laws of this state for such or similar business; or, if more than one kind of business, by two or more corporations so incorporated for such kinds of business respectively. The secretary of state shall deliver such certificate to every such corporation so complying with the requirements of law. No such corporation now doing business in this state shall do business herein after December 31st, 1892, without having procured such certificate from the secretary of state; but any lawful contract previously made by the corporation may be performed and enforced within the state subsequent to such date. No foreign stock corporation doing business in this state without such certificate shall maintain any action in this state upon any contract made by it in this state until it shall have procured such certificate.

"Sec 16. Before granting such certificate the secretary of state shall require every such foreign corporation to file in his office a sworn copy of its charter or certificate of incorporation, and a statement under its corporate seal, particularly setting forth the business or the objects of the corporation which it is engaged in carrying on, or which it proposes to carry on within the state, and a place within the state which is to be its principal place of business, and designating, in the manner prescribed in the Code of Civil Procedure, a person upon whom process against the corporation may be served within the state. The person so designated must have an office or place of business at the place where such corporation is to have its principal place of business within the state," etc.

The defendants insist that the plaintiff, having failed to comply with the provisions of the sections above quoted, cannot maintain this action. Was the plaintiff, at the times in question, doing business in the state of New York, within the meaning and intent of the statute? The contract was made in the state of New Jersey. It is true, the first order of the bamboo company for goods, which was simply a request that the plaintiff ship to it at its place of business in this state certain goods, at a specified price, was given to the plaintiff's agent at Baldwinsville, N. Y., and was by him sent by mail, or otherwise transmitted, to the plaintiff at its

place of business in the state of New Jersey, subject to approval by the plaintiff. It was approved. The minds of the parties then met. The contract was made and the goods were shipped in the ordinary way. The other orders, in no way differing from the first, upon which the balance of the goods were shipped, were sent directly to the plaintiff by mail or by telegraph, instead of being sent by or through the plaintiff's agent.

In Parsons on Contracts (volume 2, p. 701) it is said:

"If a New York merchant send his orders for goods from New York to Boston, and the goods are sent to him from Boston, either by a carrier whom he pointed out or in the usual course of trade, this would be a completion, a making, of the contract, and it would be a Boston contract."

As to all the orders except the first, the plaintiff simply received them at its place of business in New Jersey, and, after having approved them, or assented to their terms, it made a contract with a common carrier in that state, who had the means of transporting goods within the state of New York, but not a New York corporation, we must assume, to deliver the goods to the bamboo company within this state; and pursuant to such contract, also made in the state of New Jersey, the goods were delivered to the bamboo company. So far as appears, all the transactions had by the plaintiff respecting goods sent by it into the state of New York prior to the commencement of this action were of the same character as those had with the Syracuse Bamboo Furniture Company. The transactions of the plaintiff within this state were the same, we may assume, as those of other foreign corporations who are engaged in shipping goods into this state upon orders obtained by their respective drummers or agents, a practice which has become general in this country. The fact, however, that this method of disposing of goods by foreign stock corporations to residents of this state is, and for years has been, generally, and almost universally, adopted, does not aid the contention of the defendants. It would hardly be claimed that, if a resident in this state could send an order for merchandise to a stock corporation, resident of a sister state, or any number of orders, and the goods designated were shipped as directed, such foreign corporation, before it could recover for the same in our courts, would be compelled to establish an office within this state, and designate a person who should occupy the same, and upon whom process could be served, notwithstanding such corporation, through an agent or otherwise, had never been within this state for any purpose whatsoever. And yet precisely such is the transaction had between the plaintiff and the Syracuse Bamboo Furniture Company, except in respect to the first order given, and, as has been seen, that transaction only differed from the others in the fact that it was transmitted to the plaintiff by its agent. rather than directly by the bamboo furniture company. In principle the transactions were identical.

In the case of Mineral Co. v. Clute, 7 Misc. Rep. 123, 27 N. Y. Supp. 342, it is held:

"Where a foreign corporation consigns goods to persons in this state for sale, and sales are made by the factor in his own name, and the proceeds collected and accounted for by him, such corporation does not do business in

this state, within the meaning of chapter 687 of the Laws of 1892, and no certificate is necessary to enable it to maintain an action to recover the net proceeds of such goods."

In that case it is suggested by the learned judge writing the opinion that a very large number of transactions of that character are constantly being had between foreign corporations and the merchants of the city of New York, and this form of business had been carried on between the parties to that action for a series of years; but it was held that such transaction was not interdicted by the statute in question. In that case it will be observed that the foreign corporation sent its goods to a factor in New York, to be sold in the name of the factor, collected for in the name of the factor, and the proceeds, less the factor's commission, remitted to the foreign corporation. In the case at bar a foreign corporation sent its goods to the Syracuse Bamboo Furniture Company, to be used or sold by it, as it might see fit, and their value, as agreed upon, to be remitted to the plaintiff. It is difficult to discover any difference in principle between the two transactions.

In Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, cited by plaintiff's counsel, it was held that a corporation of Ohio which contracted in Colorado to manufacture machinery at its place of business in Ohio, and to deliver it in Colorado, was not doing business in Colorado, within the intent of the statute of that state, which is substantially the same as our statute. But the decision was put upon the ground that a single transaction—which was all that was proven in the case—did not constitute doing business, and by implication it was decided that, if a number of similar contracts had been made in Colorado, the plaintiff would have been doing business within the meaning of the statute. It will be observed that stress is laid upon the fact that the contract for the manufacture and delivery of the Ohio goods was made in Colorado, and not, as in this case, in the foreign state.

It is urged by the plaintiff's counsel that, if the transactions of the plaintiff within this state were "doing business" within the meaning of the statute under consideration, it must be concluded that the statute is violative of the provision of the constitution of the United States which provides that congress shall have power "to regulate commerce with foreign nations and among the several states and with the Indian tribes." There can be no doubt that a state has the power to regulate the method of doing business within its borders by a foreign as well as by a domestic corporation. It may exclude it entirely, or may impose such limitations and regulations as the legislature may deem for the best interests of the state. That such limitations are burdensome, are unjust, or unjustly discriminate between foreign corporations and domestic corporations or individuals, is unimportant, subject only to two qualifications: (1) The state cannot exclude from its limits a corporation engaged in interstate or foreign commerce, or regulate the same. Pensacola Tel. Co. v. Western Union Tel. Co., 96 U. S. 1–12. (2) The other limitation on the power of the state is where the corporation is in the employ of the general government, which is not involved here.

Stockton v. Railroad Co., 32 Fed. 9. Mr. Justice Field, in discussing this question in the case of Horn Silver Min. Co. v. State, 143 U. S. 315, 12 Sup. Ct. 403, after calling attention to the two exceptions above referred to, says:

"Having the absolute power of excluding the foreign corporation, the state may, of course, impose such conditions upon permitting the corporation to do business within its limits as it may judge expedient; and it may make the grant or privilege depend upon the payment of a specific license tax, or a sum proportioned to the amount of its capital. No individual member of the corporation, or the corporation itself, can call in question the validity of any exaction which the state may require for the grant of its privileges. It does not lie in any foreign corporation to complain that it is subjected to the same law with the domestic corporation. The counsel for the appellant objects that the statute of New York is to be treated as a tax law, and not as a license to the corporation for permission to do business in the state. Conceding such to be the case, we do not perceive how it in any respect affects the validity of the tax. However it may be regarded, it is the condition upon which a foreign corporation can do business in the state; and in doing such business it puts itself under the law of the state, however that may be characterized. The only question, therefore, open to serious consideration in this case is one of fact,—did the Horn Silver Mining Company do business as a corporation within the state?"

In the case of Gunn v. Sewing Mach. Co., 57 Ark. 24, 20 S. W. 591, one Julian, a resident of Faulkner county, Ark., entered into a contract with the defendant, a corporation organized and doing business under the laws of Ohio, by which the company agreed to sell sewing machines to him at a stipulated price, on credit, when and as he might order the same from it in Ohio. Julian agreed to canvass Faulkner county exclusively for the sale of defendant's machine; and at the same time Julian, as principal, and the plaintiff, as surety, executed a bond to the defendant, conditioned for the payment to the defendant of all sums of money for which Julian should become liable for and on account of sewing machines sold and delivered to him. The defendant sold and shipped a large number of sewing machines to Julian upon orders sent to it at its place of business in Ohio, and Julian became indebted to the defendant on account thereof in a large sum of money. Julian failed to pay. The company brought suit in Arkansas on the bond against Gunn. Gunn defended upon the ground that the sewing-machine company had failed to file any certificate in the office of the secretary of state of the state of Arkansas, designating an agent upon whom process could be served in its principal place of business in that state, as required by the statutes of Arkansas. The court says (pages 38, 39, 57 Ark., and page 593, 20 S. W.):

"In this case the contract between the corporation and Julian and the bond sued on were executed in this state, and were business transacted in Arkansas. But no sales or indebtedness were created by them. The contract was only an agreement to sell, and the bond was a condition upon which the corporation agreed to sell, and the means adopted to secure the indebtedness to be contracted by sales, and both constituted a contract. They were made a foundation of a future trade between a corporation of one state and a citizen of another, and were a direct method devised to increase the business of the former, and, as to them, serve as a basis of interstate commerce. Relying on them, the corporation sold the machines and other property, and shipped them from the state of Ohio, its place of manufacture and business, to Julian, in Arkansas; the place of sale being in Ohio. Until they ceased, according to

their terms or by agreement of the parties, to be of any force, they were an inducement to, and entered into, every sale, and formed a part of it.    According to the principles firmly established by numerous decisions of the supreme court of the United States, they (the bond and contract), the sales and shipment of the machinery and other property, were a part of the interstate commerce of the United States, which congress has the exclusive right to regulate, and were not, and could not be, affected by the act of April 4, 1887."

It will be observed that stress is laid upon the fact that while the original contract between the parties, and also the bond, were made and executed in Arkansas, they were regarded simply as the foundation of a future trade between the parties, and that the order for and shipment of the goods constituted the contract, and that it was made in Ohio.    Assuming that conclusion to be correct, the court would have been unanimous in its decision.    The chief justice dissents mainly upon the ground that, in his opinion, the contracts were all made in Arkansas, and therefore did not come within the prohibition of the constitution.

In Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592, the taxing district of Shelby county, Tenn., which included the city of Memphis, acting under the authority of a statute of that state, attempted to impose a license tax upon a drummer for soliciting within that district the sale of goods for a Cincinnati firm, which he represented. The court decided that such soliciting of business constituted a part of interstate commerce, and that the statute of Tennessee imposing a tax upon such business was in conflict with the commerce clause of the constitution of the United States, and was, therefore, void.

In McCall v. California, 136 U. S. 104, 10 Sup. Ct. 881, the plaintiff was the agent of the New York, Lake Erie & Western Railroad Company, a corporation having its principal place of business in the city of Chicago, and which operated a continuous line of railway between Chicago and New York.    As such agent, his duties consisted in soliciting passenger traffic in the city of San Francisco over the road he represented.    He did not sell tickets for the company, nor receive or pay out money on account of it.    The plaintiff was convicted of violating an ordinance of the city, in that he failed to pay the license tax imposed upon him as a condition precedent to his right to act as such agent in that city.    The court held that the license fee as to such agency was a tax upon interstate commerce, and in that respect was unconstitutional.

It is concluded that, if the plaintiff was doing business in the state of New York, within the meaning and intent of the statute in question, the statute is in violation of the commerce clause of the constitution of the United States, and is void in so far as it attempts to regulate the transactions in question.    It follows that the plaintiff is entitled to recover against the defendants the amount of the judgment recovered by it against the Syracuse Bamboo Furniture Company on account of the goods sold and delivered to it.    The plaintiff's attorneys will prepare findings, submit them to defendants' attorneys, and, if not agreed upon, they will be settled before me upon three days' notice.

Ordered accordingly.