---

(64 App. Div. 138.)

## VAUGHAN MACH. CO. v. LIGHTHOUSE.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. FOREIGN CORPORATIONS—CERTIFICATES TO DO BUSINESS—ACTIONS.

   A foreign corporation making a sale of goods, which it ships from its home office to its customer in New York, is not "doing business in this state," within Laws 1892, c. 687, § 15, requiring such a corporation to procure a certificate, and prohibiting the maintenance of any action on any contract made by it until it has procured such certificate.

2. SALES—WARRANTY—PAROL EVIDENCE.

   Where an agreement for the purchase of machines is not wholly reduced to writing, parol evidence is admissible in an action for the price to show an oral warranty.

Exceptions from trial term.

Action by the Vaughan Machine Company against John C. Lighthouse. A judgment was directed for plaintiff, and exceptions were ordered heard in the first instance, and proceedings stayed after judgment. Exceptions sustained.

Argued before McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Elbridge L. Adams, for plaintiff.

J. A. Adlington, for defendant.

SPRING, J. The plaintiff is a foreign corporation organized in the state of Maine, with its principal office in Portland, in that state, but with its factory in Peabody, Mass. On March 29, 1897, through one of its incorporators, it entered into the following agreement with the defendant, who resides in, and is engaged in business in, this state:

"Rochester, N. Y., March 29, 1897.

"Vaughan Machine Company, Peabody, Mass., agrees to ship to Mr. J. C. Lighthouse, Rochester, N. Y., machinery as follows: 1 No. 5 combined beam house machine; 1 No. 5 setting and stoning out machine,—subject to the following terms: f. o. b. Peabody, Mass. ($2,000), two thousand dollars, payable in monthly installments of ($200) two hundred dollars each month, or more, beginning two months from the date of this agreement.

"[Signed]                                     Vaughan Machine Co.
                                              "Charles B. Vaughan.
"Accepted as above.                           J. C. Lighthouse."

The machinery described in the agreement was subsequently shipped to the defendant, who has ever since used it. This action was commenced to recover the purchase price of the goods afore-

said, and the defendant claims in defense that the plaintiff has
failed to procure the certificate from the secretary of state that
it has complied with all the requirements of law essential to enable
it to do business in this state; and, second, that at the time of the
sale the plaintiff gave an oral warranty as to the capacity of said
machines and their method of operation, and that they were de-
fective, and did not meet the conditions of the said warranty.

Section 15, c. 687, Laws 1892, which is part of the general cor-
poration law, reads as follows:

"No foreign stock corporation other than a monied corporation, shall do
business in this state without having first procured from the secretary of
state a certificate that it has complied with all the requirements of law
to authorize it to do business in this state, and that the business of the
corporation to be carried on in this state is such as may lawfully be carried
on by a corporation incorporated under the laws of this state for such or sim-
ilar business. * * * The secretary of state shall deliver such certificate
to every such corporation so complying with the requirements of law.
* * * No foreign stock corporation doing business in this state without
such certificate shall maintain any action in this state upon any contract
made by it in this state until it shall have procured such certificate."

Section 16 provides the mode of procedure to make effective the
foregoing provisions. Cognate statutes exist in other states, and
the authority of a state legislature to prescribe upon what terms
a foreign corporation may carry on its business within a state has
been well established. Blake v. McClung, 172 U. S. 239, 19 Sup.
Ct. 165, 43 L. Ed. 432; People v. Wemple, 131 N. Y. 64, 29 N. E.
1002, 27 Am. St. Rep. 542. Legislative interference must not be re-
pugnant to the laws of the United States, or affect interstate or
foreign commerce. Manufacturing Co. v. Ferguson, 113 U. S. 727,
5 Sup. Ct. 739, 28 L. Ed. 1137; Fritts v. Palmer, 132 U. S. 282, 10
Sup. Ct. 93, 33 L. Ed. 317. The foregoing statute does not invade
any of these inhibitions, and the only duty with which we are
charged is to give interpretation to it so far as it pertains to this
case. The plaintiff has not attempted to comply with the law quot-
ed, claiming that it is not doing business within its meaning. The
witness Vaughan, who is the vice president, and one of the man-
agers, of the corporation, described the manner in which the plain-
tiff's business is carried on. He testified:

"Some of our machines are sold by personal contact with the trade; some
are sold by correspondence. When they are sold by correspondence, the
company receives letters ordering machines from the tanneries at its office
in Peabody, Mass., and the orders are accepted or rejected, according as the
company desires or not. When they are sold by personal contact, they are
subject to the same conditions; that is, the office at home passes upon the
advisability of fulfilling any agreement which the agents may make with
customers. It is not a usual thing with us to sell machines by written
contract, such as the one here. I don't recall but one other of the thirty
machines sold by me where such a contract was made."

The plaintiff has no office in the state of New York. Its business
is conducted like that of any individual or association or corporation
manufacturing its goods at its factory and shipping them pursuant to
orders received there. The statute quoted does not intend to relate
to business conducted in that manner. It contemplates a location,
a domicile, having an office, and the investment of some part of its

capital, within the state. Orders can then be transmitted, and dealings had with it at this office, and the conduct of its business is thus transferred, in a measure at least, to the headquarters established within the territorial limits of this state. It thus settles within the state, and enjoys the benefits incident to a domestic corporation, and the legislature imposes requirements and obligations upon it by reason of the privilege conferred of doing business like a body corporate organized in this state. It was never intended to hamper trade and restrict interstate commerce by bringing within its ban every corporation which happens to cross the state boundary with its wares to supply customers who have ordered them from the home office. In Lumber Co. v. Holbert, 5 App. Div. 559, 39 N. Y. Supp. 432, the appellate division of the Third department, in construing this section, says, at page 562, 5 App. Div., and page 433, 39 N. Y. Supp.:

"The procuring of orders for goods by commercial agents traveling in this state, which orders have to be transmitted to the home office in another state for approval there, and then the goods shipped from the home place of business to the purchaser in this state, where the foreign corporation has no office or place of business, does not, I think, constitute 'doing business in this state,' within the meaning of the statute."

Knitting Co. v. Bronner, 20 Misc. Rep. 125, 45 N. Y. Supp. 714; Droege v. Manufacturing Co., 163 N. Y. 466–471, 57 N. E. 747; Varnish Co. v. Connell, 10 Misc. Rep. 553, 32 N. Y. Supp. 492; Manufacturing Co. v. Connell, 88 Hun, 254, 34 N. Y. Supp. 717.

In giving effect to the identical expression, "doing business in this state," in the taxing statute, it was held not to cover a foreign corporation which sent goods to a salesroom in the city of New York to be sold by its agent, and the avails transmitted to the home office in Cleveland. People v. Barker, 5 App. Div. 246, 39 N. Y. Supp. 151. See People v. Roberts, 27 App. Div. 455, 50 N. Y. Supp. 355. In other states where a similar statute has been enacted, a like construction has been given to them. Coit & Co. v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819; Toledo Commercial Co. v. Glen Mfg. Co., 55 Ohio, 217, 45 N. E. 197; Manufacturing Co. v. Dix (C. C.) 64 Fed. 412–413. In giving effect to this section of the statute it must be kept in mind that it was not designed to fetter or exclude business from the state. Its aim was to require a foreign corporation which was on a level in its privileges with one organized here to bear the burdens and be equally accessible to process with state corporations. To give it the construction contended for by the defendant would interfere with that comity between the states in their trade relations which has been potential in the development of our commercial and industrial business. The crucial test in doing business within the meaning of this statute is not an isolated transaction within the state, or the transshipment of goods from the home office pursuant to orders taken by drummers within the state, but it is the establishment of an agency or branch office within our state limits. The plaintiff does not come within that inhibition, and consequently is not required to procure the certificate made a preliminary by the section to the enforcement of any claim it may have for goods sold within our jurisdiction.

2. Upon the trial the. defendant was permitted to testify, under objection, to an oral warranty, made at the time of the purchase of the machinery, by Mr. Vaughan, that the machinery "would get you more leather out of each hide than he could get by hand, for the machinery stretches them out." And Vaughan further stated that each machine would largely reduce the number of men employed, specifying to what extent in each department with the new machines one man would perform the labor which required four or five men with the machine defendant then had. He further agreed on behalf of the plaintiff that, if the machines did not fulfill the warranties made, the plaintiff would take them back. This evidence pertaining to the oral agreement was subsequently stricken out by the court on the ground that "it varied and enlarged" the written contract of the parties. That the agreement was not wholly reduced to writing is obvious. At the time the contract was entered into, the plaintiff sold to the defendant countershafting, pulleys, etc., to run the machines. These items were not embraced in the written agreement, and the sale, value, and the whole contract in regard to them was testified to by the vice president of the plaintiff. The claim of the defendant is that the written agreement did not contain another important item, and that was the warranty of the capacity of these machines, and the right to return them if unsatisfactory; and it contended that this guaranty was made the subject of an independent oral agreement, and the memorandum was intended to include only the kind of machines, the purchase price, and. time of its payment, while everything which was ancillary rested in parol. That oral evidence is not admissible to vary the written engagement of the parties to it where it is their entire agreement is elementary, but the exception is apparently as well established that an independent collateral agreement, not contained in the writing, can be shown by parol. The philosophy of this exception involves no infringement upon the integrity of the general rule, but it is received, not to vary or depart from the written agreement, but to explain it, or show an independent agreement consistent with that reduced to writing. The verbal agreement is not in hostility to the general rule, but distinct and separable from it without undermining it. In Chapin v. Dobson, 78 N. Y. 74, 34 Am. Rep. 512, the plaintiffs sold to the defendant 23 machines, and the contract of sale, which was in writing, was identical in its material features with that in the present case. The vendors sued for the purchase price, and the defendant answered, setting up an oral agreement, made at the same time with the written agreement, to the effect that the machines would work satisfactorily, and, if not, that the plaintiffs would receive them back. This parol guaranty was proven, and found by the referee, and the plaintiffs appealed from the judgment. The court of appeals, after an extended discussion of the authorities, sustained the ruling of the referee, and, among other things, gave expression to the following:

"The written contract and the guaranty do not relate to the same subject-matter. The contract is limited to a particular machine as such. The guaranty is limited to the capacity of the machine. It is one thing to sell or agree to furnish machines of a specific kind, as of such a patent, or of a

particular designation, and another thing to undertake that they shall operate in a particular manner, or with a certain effect; or, as in this case, that they shall do the buyer's work satisfactorily. The first would be performed by the delivery of machines answering the description or the specifications of the patent, and whether they did or not conform thereto would be the only inquiry. As to the other, it in no respect touches the first, nor does it operate as a defeasance, but leaves it valid and to be performed, and the consequences of a breach of the guaranty are a recoupment or abatement of damages in favor of the defendant; and this is so whether the contracts are in writing or not, for the guaranty is valid although not in writing, and the same rule must apply, for in either case the relation of the guaranty to the contract would be the same."

There has been much criticism of Chapin v. Dobson in the textbooks and by the courts of other states. In our state it has been termed "a border case," but I do not find that it has been overruled. That case, if still the law, is decisive of the present one; and until the highest court of. the state indicate an intention to disregard it, we feel compelled to follow it as the law governing us. There are many other authorities tending in the same direction. Schmittler v. Simon, 114 N. Y. 176, 21 N. E. 162, 11 Am. St. Rep. 621; Routledge v. Worthington Co., 119 N. Y. 592, 23 N. E. 1111; Bagley & Sewall Co. v. Saranac River Pulp & Paper Co., 135 N. Y. 626, 32 N. E. 132; Box Co. v. Browne, 55 App. Div. 444, 66 N. Y. Supp. 867; Hanes v. Sackett, 56 App. Div. 610, 67 N. Y. Supp. 843.

The defendant's exceptions should be sustained, and a new trial ordered, with costs to the defendant to abide the event. All concur.