(41 Misc. Rep. 144.)

PEOPLE ex rel. DURAND–RUEL et al. v. WELLS et al., Com'rs of Taxes and Assessments (three cases).

(Supreme Court, Special Term, New York County. June, 1903.)

1. TAXATION—NONRESIDENT DEALERS—BUSINESS WITHIN THE STATE.
    Where nonresidents constantly maintain in New York City a place for the sale of imported pictures, and constantly replenish their stock from abroad, and keep in New York a bank account sufficient for all current expenses, they do not conduct a mere agency in New York, but are permanently engaged in business in the state, and are therefore taxable on their capital invested to the same extent as residents.

Certioraris by the people, on relation of Paul Durand-Ruel and others, against James L. Wells and others, as commissioners of taxes and assessments of the city of New York, to review assessments against relators for capital invested in business within the state. Writs dismissed.

Coudert Bros. (Frederick R. Coudert, Jr., and Charles A. Conlon, of counsel), for relators.

George L. Rives, Corp. Counsel (Curtis A. Peters, of counsel), for respondents.

LEVENTRITT, J.   I am of the opinion that the relators are continuously and permanently doing business in this state, and that they are therefore taxable as for capital invested in this state on the amount of merchandise on hand.   The question of permanency and continuity is primarily one of intent.   Each case must be considered on its own facts, and a circumstance quite determinative of intent in one case may prove secondary in another.   If these cases presented simply the bald question of merchandise sent into this jurisdiction for sale, this decision would probably have to be controlled by such cases as People ex rel. Parker Mills v. Commissioner of Taxes, 23 N. Y. 242, and People ex rel. Sherwin-Williams Co. v. Barker, 5 App. Div. 246, 39 N. Y. Supp. 151.   But I think there is much more.   The relators are picture dealers, whose main place of business is at Paris. They maintain in this city, at No. 389 Fifth avenue, a second establishment for the sale and delivery of paintings.   These are all sent from abroad, some of them having been purchased with special reference to the New York market.   A stock of the average value of $75,000 is kept here.   The relators lease the entire building for $20,-000; reserving one floor to themselves, and subletting the others at rentals aggregating $11,500.   They have been tenants of the present building since 1894, under five-year leases, with options for renewal. The present lease contains a similar option.   When the building was first leased the floor occupied by the relator was fitted up at an expense of $3,000.   For six months of every year, during the so-called "season," one of the relators makes his headquarters at New York, in exclusive control of the business.   At other times it is left in charge of employés.   Remittances are periodically made to the main house, at Paris, as one of the relators testified, biweekly, or more frequently if the åmount realized from sales so warranted.   The relators maintain a continuous bank balance here, sufficient to pay current expenses, consisting of salaries, rent, and import duties.   The establishment is kept open throughout the year, although but few pictures are sold during the summer.   All moneys realized on sales at New York houses are remitted to Paris in the manner and under the circumstances indicated.   The stock, which averages $75,000 during the six months of the season (that also being the amount of insurance carried), ranges between $5,000 and $10,000 during the summer.   As paintings are sold, they are replaced by new ones. Pictures which cannot be disposed of are returned to Paris, but the length of time that the pictures or paintings are kept here varies from months to five or six years.   The large majority of canvases are the property of the firm, although some are sent hither through the Paris house on consignment by foreign owners.

On this state of facts, I am of the opinion that the relators are "nonresidents of the state doing business in the state, either as principals or as partners," and they should therefore "be taxed on the capital invested in such business at the place where such business is carried on, to the same extent as if they were residents of this state."   Laws 1896, p. 800, c. 908, § 7.   "Regarding the relators' entire course of business in this state, the intent, borne out by conduct, to establish and maintain a permanent business, is, to

my mind, unmistakable." People ex rel. Reversible Collar Co. v. Feitner, 31 Misc. Rep. 553–556, 65 N. Y. Supp. 518. The relators argue that the firm maintains here merely an agency for the convenience of its customers, to which pictures are sent from the office in Paris for delivery and sale. If by this is meant that the customers are those who have purchased abroad for delivery here, the testimony does not bear out the contention; if that the customers are those that purchase here, the case is the same as with any domestic business. Merely because the source of supply is foreign does not change the character of the New York business. The business here is no more an agency than is that of any concern maintaining different establishments in different localities. The relators are not manufacturers, and in this particular these cases differ from all of those cited on the briefs. They do not manufacture or create their stock in Paris any more than they do here. They deal primarily in foreign canvases, and ergo make their purchases abroad, in France or elsewhere on the Continent. Their stock is acquired by purchase. They buy for their Paris house, and they buy for their New York house. In its essentials the business is the same in both places. They display their pictures for sale in that place where they deem there exists the more likely market. Their major display is in Paris; their minor display in New York. But the manner of conducting business is substantially the same in both places. Being residents of Paris, their financial matters are attended to there. But that is not a controlling feature. All facts must be considered together in elucidating the intent. It is difficult to conceive what else the relators could do to maintain a continuous and permanent business here. They lease a building, of which they occupy a part, for a term of years, and by the inclusion of options for renewal, and the exercise of those options, indicate their intention of continuing permanently the style of business they conduct. As fast as pictures are sold, they replace them. Their market here is permanent, not temporary. Pictures are kept here for indefinite times. The relators are established here for the purpose of catering to and reaching a particular class of local trade, which is apparently not equally accessible to them abroad. They are actively in competition for that class of buyers. They have succeeded in establishing a steady and lucrative business. The intent to conduct it continuously and permanently is to me beyond question. On different facts, I think it can be said here, with equal force as in People ex rel. Crane Co. v. Feitner, 49 App. Div. 108, 110, 62 N. Y. Supp. 1107, that it is evident, "first, that the relator's property is continuously under the protection of our laws; second, that the proceeds of its sales are not immediately remitted to the home office; and, third, that part of its capital is practically invested and reinvested here. As fast as goods are sold, others must be forwarded to keep up the average." See, also, People ex rel. Armstrong Cork Co. v. Barker, 157 N. Y. 159, 51 N. E. 1043. The relators seek to distinguish these cases, as well as others cited by the defendants, on the ground that these were all cases of corporations which had filed the statutory certificate to do business in this state. But the procurement of the statutory certificate is merely one of the evidentiary

facts—often a most important one—in controlling the question of intent. I am therefore of the opinion that the writs should be quashed. The objection as to overvaluation, now made for the first time, is not timely.

Writs quashed.