PITTSBURG AND SHAWMUT COAL COMPANY, Claimant, *v.* THE STATE OF NEW YORK.

Claim No. 16422.

Court of Claims, January, 1922.

Contracts — designation of foreign corporation as agent of state to purchase coal for state prison — invoices sent to and returned by warden of prison for a time — claim for unpaid account of agent is one on " express contract " and " submitted by law to officer for audit " within Code Civ. Pro., § 264, as amended in 1920 — jurisdiction under Court of Claims Act, § 12 — foreign corporation — limitation as to " doing business in this state "— impairment of interstate commerce — General Corporation Law, § 15 — when certificate under not required — " action " includes present claim.

The state superintendent of prisons on April 1, 1918, delivered to claimant, a Pennsylvania stock corporation, a communication stating in substance that he had appointed it his agent to purchase for the prison department, during the ensuing year, approximately 24,000 tons of bituminous coal at the prices and subject to the regulations of the United States fuel administration, the claimant to receive a commission of fifteen cents per ton. After said communication had been ratified by the said fuel administration and approved by and filed with the state comptroller, the agent and warden of Sing Sing prison, pursuant to said communication, gave claimant six orders, each for 1,166 gross tons of coal. Claimant in complying with said orders sent to the warden invoices for coal delivered to the commission, and after the warden had checked the invoices, vouchers prepared by him were forwarded to claimant for receipt and verification, after which they were returned to the warden, who remitted to claimant payment for the shipments involved. Late in 1918 the invoices sent to the warden bringing no response, the unpaid account grew until it reached $8,150.42 for coal supplied during October, November and December, 1918, and in January, 1919, amounting to $7,770.33, the commissions amounting to $380.09. After several letters requesting payment of the account had been sent but no action taken, claimant's auditor and treasurer made a visit to the warden's office to obtain a settlement of the account. While there he was shown a paper

dated December 20, 1918, purporting to be a copy of a letter from claimant to the warden in substance advising him that its account had been assigned to its eastern agent, " W. F. Bonstein, of 21 Park Row, New York City," and directing that payments thereafter be made to him. Claimant's auditor was then informed that payments due claimant had been remitted in accordance with said letter. The original of said alleged letter, which in fact had been in the files of the prison, had disappeared with an important part of the correspondence in relation to the coal matter. Said letter was not written by claimant nor by any one authorized by it to do so. W. F. Bonstein received in all on checks of the warden the sum of $8,150.42, the exact amount of claimant's account, but he himself was never located. Claimant's auditor delivered a written statement of its account to the warden and orally demanded payment, which the warden refused, stating that he had no funds with which to pay, having paid the money to W. F. Bonstein. Upon ordering an award for the full amount of the claim, *held*, that it was clear that the claim was one on " express contract " and one " submitted by law to any other tribunal or officer for audit and determination " within the meaning of section 264 of the Code of Civil Procedure, as amended by chapter 482 of the Laws of 1920, and that the " officer " is the warden; this court, therefore, had jurisdiction under section 12 of the Court of Claims Act, Laws of 1920, chapter 922.

For several years claimant had maintained a sales office in the city of Buffalo, N. Y., in charge of its vice-president and general manager, who had no authority to bind claimant, and the only acts of claimant within the state of New York were the solicitation of orders for coal from customers by letter, wire or personal interviews. Such orders were transmitted to the home office in the state of Pennsylvania for approval, and if approved were filled by shipment to the purchaser from mines in that state. *Held*, that such acts did not constitute " doing business in this state " within the purview of section 15 of the General Corporation Law.

The power of the state to exclude a foreign corporation from doing business in this state is subject to the limitation that freedom of interstate commerce is not to be impaired, and section 15 of the General Corporation Law must be construed in subordination to that principle. The claim, therefore, is not affected by said section 15 and claimant was not required to procure the certificate prescribed thereby.

The word " action " in section 15 of the General Corporation Law includes a claim in the Court of Claims.

CLAIM on express contract.

*William R. Daniels (Edgar W. Tait*, of counsel), for claimant.

*Carey D. Davie* and *Glenn A. Frank*, deputy attorneys-general, for state of New York.

*Parsons & McClung*, for William H. Moyer.

CUNNINGHAM, J.   The claimant is a Pennsylvania stock corporation.   On April 1, 1918, the state superintendent of prisons delivered to it a communication stating in substance that he had appointed it his agent to purchase for the prison department approximately 24,000 tons of bituminous coal, during the ensuing year, at the prices and subject to the regulations of the United States fuel administration, the claimant to receive a commission of fifteen cents per ton. This communication was ratified by the fuel administration, and was approved by and filed with the state

comptroller.   On or about April 9, 1918, the agent and warden of Sing Sing Prison (hereinafter called the warden), pursuant to the above-mentioned communication, gave the claimant six orders for 1,166 gross tons of coal each.   In compliance therewith claimant purchased, paid for and delivered large quantities of coal to the prison.   It was the practice for the claimant to send to the warden, from time to time, invoices for the coal delivered and the commissions, and after the invoices were checked by the latter, vouchers prepared by him were forwarded to the claimant for receipt and verification, after which they were returned to the warden, and the latter remitted to the claimant payment for the shipments involved.   This course was followed uniformly, until late in the year 1918.   Then the invoices brought no response from the warden and the unpaid account grew in amount, until it reached the sum of $8,150.42, this sum being for 5,067,900 pounds of coal supplied during the months of October, November and December, 1918, and in the month of January, 1919, at the prices fixed by the fuel administration, amounting to $7,770.33, and the commissions, amounting to $380.09.   Several times claimant, by letter, requested payment of the account.   No action was taken but some corre- spondence ensued.   On April 11, 1919, Laurence G. Bonstein, the claimant's auditor and treasurer, visited the warden's office at Sing Sing, to obtain a settlement of the account.   There he was shown a paper, dated December 20, 1918, purporting to be a copy of a letter written by the claimant to the warden, in substance, advising the latter that the claimant had assigned its account to its eastern agent, W. F. Bonstein of 21 Park Row, New York city, and directing that payments thereafter be made to him. L. G. Bonstein then was informed, also, that the payments due the claimant had been remitted to W. F. Bonstein, in accordance with the letter.   The claimant's Mr. Bonstein denied the authenticity of the letter and that any assignment had been made by the claimant.   Superintendent of Prisons Rattigan, Warden Moyer and he then visited the building at 21 Park Row, New York city. The name of W. F. Bonstein was found on the directory at the entrance, but the office formerly rented by him was occupied by other tenants.   He was not located.   One of the warden's checks for $2,000.28 was found in his mail, for which he had not called. The agent of the building could not describe W. F. Bonstein, who had rented the office from the agent's brother.   At the bank, through which W. F. Bonstein had collected the checks, they ascertained that he had had all his transactions with the bank by mail.   No one there could describe him.   W. F. Bonstein received in all $8,150.42.   Upon returning to the prison, they discovered

that the original of the alleged letter of December 20, 1918, which, in fact, had been in the files of the prison, had disappeared, with an important part of the correspondence above mentioned. L. G. Bonstein, April 11, 1919, personally delivered to the warden a written statement of the account and orally demanded payment of it. The warden refused, stating that he had no funds with which to pay, having paid the money to W. F. Bonstein. On May 24, 1919, the warden, by letter, consented to pay claimant $2,000.28, which was all of the account other than the items of this claim, and, in fact, he did pay claimant that sum by check, soon afterward and before notice of intention was filed.

The letter of December 20, 1918, was not written by the claimant, nor by any one authorized by it to do so. The claimant had not assigned its account, nor any portion of it, to any person. It had no knowledge whatever of W. F. Bonstein, nor did it have any agent at New York city. It has not been paid any part of the $8,150.42. It seeks to recover that sum, with interest, in this proceeding.

Two defenses are interposed:

1. The state contends that this court has no jurisdiction, on the ground that this claim is one submitted by law to another officer for audit or determination, and that it has not been audited and rejected by him.

2. The state contends that the claimant cannot maintain this proceeding, because it has failed to procure a certificate required of a foreign corporation by sections 15 and 16 of the General Corporation Law of this state.

There is no contention that the letter of December 20, 1918, avails the state. The claimant furnished the coal, advanced the money and has not been paid. It supplied the prisons with coal when, during the war, they were bereft of it, sustaining substantial loss by thus diverting to them coal which it had contracted to sell elsewhere very profitably. Its course has been impeccable, unless it has failed in one or both of the statutory requirements asserted by the state. Under the circumstances, it would be unfortunate were we compelled to deny it compensation.

At one time this court had no jurisdiction of " a claim submitted by law to any other tribunal or officer for audit and determination." *Quayle* v. *State of New York*, 192 N. Y. 47. The statute was amended by adding to the provision last quoted the words " except where the claim is founded upon express contract and such claim, or some part thereof, has been rejected by such tribunal or officer." Code Civ. Pro. § 264, as amended by Laws of 1920, chap. 482; Court of Claims Act (Laws of 1920, chap. 922), § 12. Therefore,

four inquiries confront us: (a) Is this claim " one submitted by law to any other tribunal or officer for audit and determination; " (b) if so, to what officer; (c) is it on express contract; (d) was it rejected by such officer or tribunal?

The general provisions of the State Finance Law (Cons. Laws, chap. 56, §§ 4, 12, 16, 17, 21, 23) do not determine these inquiries or control this claim. They must be read in connection with the following sections of the Prison Law (Cons. Laws, chap. 43), which specifically regulate the procedure applicable.

Section 118 obliges the warden to execute a bond for his faithful official conduct and accounting. Section 126 provides that the warden on the first day of each month shall make a detailed estimate of the necessary expenses of the prison for the month, and shall submit it to the superintendent of state prisons, who may revise it, and shall certify to it and present it to the comptroller, who shall authorize the warden to make his draft on the treasurer, the warden to make purchases in behalf of the state for the sum certified, which amount shall be paid on the warrant of the comptroller. Section 127 requires the warden, on the first day of each month, to make to the comptroller a full, itemized statement of all receipts and disbursements for the prison for the preceding month, accompanied by the necessary vouchers; if any of the latter are objectionable, the comptroller shall enter his dissent thereon and return them. Each *statement* shall be verified by the warden. Section 131 provides that the warden shall have the fiscal control of the prison. Section 132 requires the warden to supply provisions and other suitable articles for the prison, by contract or purchase. Section 133 requires the warden to take *bills* for all goods purchased, at the time of such purchase, and the person *to whom any bill shall be paid*, to make and subscribe an affidavit to the account, and that the articles therein specified were actually furnished, that neither the warden, nor any person in his behalf, had any interest in the articles sold, or in the profits thereof, etc., and that he had actually received the full amount in cash from the warden.

It is clear that this claim is one submitted by law to another officer for audit or determination, within the meaning of section 264 of the Code of Civil Procedure, and that the officer is the warden. No audit or determination is prescribed at the time of the submission of the monthly estimate. At that time no goods have been furnished and no claim exists. There is merely an estimate of the prison's requirements for the month and an approval of it. If it can be called an audit at all, it surely is not the audit upon which payment or rejection of the claim depends, and which is the statutory condition precedent to our jurisdiction.

The procedure prescribed by section 126 is not between the state and the claimant at all. It is a matter of administration with which, at that stage, the claimant has nothing to do. It is preliminary to the actual purchase and the creation of any claim. Its purpose is to authorize the warden to incur the obligation and to supply him with funds for payment. As fiscal officer he then is empowered to make the purchase, or contract, which creates the claim, and to make payment. His official action alone intervenes between the issuance of the comptroller's warrant for the amount of the estimate as approved, and the payment of the claim for the supplies purchased. It alone immediately precedes payment or refusal of payment. The statute prescribes no audit or determination of the claim by the comptroller, as *between the state and the claimant,* or preceding payment to the latter. An audit by the comptroller follows payment to the claimant, but it is a secondary audit, in which the latter is not concerned. It is between the state and the warden. It determines the account between the state and its disbursing officer. The audit and determination *upon which payment of the claim depends,* by the statute, is committed to the warden. Upon his approval, the claim is paid; upon his refusal or rejection of it, if it be on express contract, this court acquires jurisdiction. The distinction between this case and the statute involved in *People ex rel. Grannis* v. *Roberts,* 163 N. Y. 70, is palpable.

The claim at bar clearly is one on express contract. This court, therefore, has jurisdiction, if, in fact, the warden had audited and rejected it.

At the time of each shipment the claimant delivered to the warden an invoice, that is, a *bill,* therefor. On April 11, 1919, its officer again delivered to him a complete statement of the account. Oral demand for payment of it was made upon him and he orally refused to pay, solely for the reason hereinbefore stated, and later in writing allowed and paid all of the account except that here in litigation. The state contends that this procedure did not confer jurisdiction upon us — that presentation and rejection of a formal verified and receipted claim or voucher was essential to our jurisdiction. Except for the requirement of section 133 of the Prison Law that the warden " shall take bills for all goods purchased * * * at the time of such purchase," there is no statute, expressly or impliedly, prescribing any specified or formal method of presentation to, or audit, allowance or rejection by, the warden of claims. In addition to a *bill,* the statute requires a claimant, *upon payment,* to give to the warden a formal, verified voucher, which later, with his account for the month, the warden must file with the

comptroller. §§ 132, 133. A voucher is a receipt. 40 Cyc. 228. The statute requires no such voucher or affidavit in the absence of payment of the claim or upon rejection of it. The contents prescribed by the statute (§ 133) for the affidavit or verification preclude its use, except on payment of the claim. It could not be verified truthfully unless the claim is paid. It is patent that the one purpose of it is to substantiate the warden's account with the comptroller. In any event, to exact it in the case of a claim, payment of which has been refused on other grounds expressly, would be to require an idle ceremony. If the legislature desired such procedure, it would have required it by appropriate language. To sustain our jurisdiction does not require us to hold that oral audit and rejection by the warden sufficed, because here was also an audit and payment in writing to the claimant of all its account, other than that part of it which is the·subject of this claim. This amounted to a rejection of the latter. *Waples Co.* v. *State of New York,* 16 C. C. Rep. 54. This court has jurisdiction.

The General Corporation Law (Cons. Laws, chap. 23), section 15, provides generally that no foreign stock corporation shall do business in this state without first having procured from the secretary of state the certificate therein mentioned, and that no such corporation doing business in this state shall maintain an action in this state upon a contract made by it here, unless prior to the making of the contract it shall have procured such certificate. The same statute (§ 16) prescribes the conditions upon compliance with which the certificate will be issued. The word " action " in the statute includes a claim in this court. *Bridge's Sons, Inc.,* v. *State of New York,* 188 App. Div. 500; affd., 231 N. Y. 532. The claimant never has procured a certificate. It contends that the statute does not apply because (a) it was not doing business in this state; (b) the contract was not made in this state; and (c) it was engaged exclusively in interstate commerce.

Activities within this state sufficient to constitute doing business within it so as to render a foreign corporation amenable to process, yet may be insufficient to amount to doing business in the state within the meaning of sections 15 and 16 of the General Corporation Law. *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259; *International Text Book Co.* v. *Tone,* 220 id. 313. A single transaction within the state is insufficient to constitute doing business in·the state. There must be a continuity of conduct in that respect. Intent to establish or carry on and continue business within the state is essential. *Penn Collieries Co.* v. *McKeever,* 183 N. Y. 98; *People ex rel. Durand-Ruel* v. *Wells,* 41 Misc. Rep. 144; *Cooper Co.* v. *Ferguson,* 113 U. S. 727; *International Textbook Co.* v. *Pigg,* 217

U. S. 91.   It is evident, therefore, that determination whether the claimant was doing business in this state, within the meaning of the statute, depends rather upon its course of conduct and activities generally, than upon the character of the particular transaction involved in this claim.

For several years the claimant had maintained a sales office in Buffalo, in charge of J. R. Barnett, its vice-president and general sales manager, and in which a few clerks were employed.   Its only acts within the state of New York were the solicitation of orders for coal from customers by letter, wire or personal interviews. These orders were transmitted to the home office at Kittanning, Penn., for its approval.   If approved, they were filled by shipments of coal to the purchaser from the mines in that state.   All coal sold by it was mined in Pennsylvania, purchased by it there and there shipped, consigned to its purchasers in this state.   Claimant never kept in New York its seal, account books, any stock of coal, bank accounts or other property, except some office furniture.   It never made collections or disbursed money from its Buffalo office or in this state.   It has held no corporate meeting here.   Its vice-president never has performed any function as such in this state. Its course of conduct has been invariably and exclusively as stated.

The authorities clearly establish that such activities do not constitute doing business in this state within the purview of the statute.   *Vaughn Machine Co.* v. *Lighthouse,* 64 App. Div. 138; *Burrowes Co.* v. *Caplin,* 127 id. 317; *American Contractor Pub. Co.* v. *Nocenti Co.,* 139 N. Y. Supp. 853; *Hovey* v. *De Long Hook & Eye Co.,* 211 N. Y. 420; *Murphy Varnish Co.* v. *Connell,* 10 Misc. Rep. 553.   These cases are clearly distinguishable in facts from others where foreign corporations were held to be doing business in this state.   *Pittsburgh El. Specialties Co., Inc.,* v. *Rosenbaum,* 102 Misc. Rep. 520; *People ex rel. S. C. Oil Co.* v. *Wemple,* 131 N. Y. 64; *People ex rel. Durand-Ruel* v. *Wells, supra.*

It is equally clear to us that the contract involved was not made in this state.   Acceptance was by act — the shipments of coal in Pennsylvania, f. o. b. the mines.   It is undisputed that Barnett had no authority to bind the claimant, and that all contracts must be approved by the home office.   *Stafford Mfg. Co.* v. *Newman,* 75 Misc. Rep. 636; *Aultmann, Miller & Co.* v. *Holder,* 68 Fed. Rep. 467; *New York Terra-Cotta Co.* v. *Williams,* 102 App. Div. 1; affd., 184 N. Y. 579.

Quite irrespective of the foregoing discussion and of the questions whether claimant was doing business in this state and where the contract was made, it is indisputable that the activities and transactions of the claimant in this state were all in aid and furtherance

of interstate commerce and were part of it.     As to a foreign corporation so engaged, this statute is impotent.     The power of the state to exclude a foreign corporation is subject to the limitation that freedom of interstate commerce is not to be impaired.     This statute must be construed in subordination to that principle.     This claimant, therefore, is unaffected by it and was not required to procure the certificate it prescribed.     *Sioux Remedy Co.* v. *Cope*, 235 U. S. 201; *Cheney Brothers Co.* v. *Massachusetts*, 246 id. 147; *United States* v. *Tucker*, 188 Fed. Rep. 741; *International Textbook Co.* v. *Pigg*, 217 U. S. 91; *Stockard* v. *Morgan*, 185 id. 27; *Cooper Co.* v. *Ferguson, supra; Crenshaw* v. *Arkansas*, 227 U. S. 387; *Buck Stove Co.* v. *Vickers*, 226 id. 205; *Murphy Varnish Co.* v. *Connell, supra; Hovey* v. *De Long Hook & Eye Co., supra; Dahuke-Walker Milling Co.* v. *Bondurant*, 42 U. S. Sup. Ct. Repr. 106.

Claimant is entitled to an award for the full amount of the claim, with interest.

ACKERSON, P. J., concurs.

Ordered accordingly.