Caroline K. Simon, J.
The claim herein, duly filed with the Clerk of this court and the Attorney-General on the 25th and 26th days of January, 1962, respectively, is for the appropriation in fee of 0.768± acres of claimants’ land pursuant to section 30 of the Highway Law and acts amendatory thereto. The instant taking is described as Greenville-Coxsackie, Part 2, S. H. No. 719, Greene County, Map No. 47, Parcel No. 63, and the aforesaid map and description was filed in the office of the Secretary of State on October 18, 1960 and in the office of the County Clerk of Greene County on June 27, 1961; service by publication being effected on the claimants herein on October 13, 1961.
The court adopts the description of the appropriated property as shown on the description filed in the Greene County Clerk’s office, a copy of which is attached to the claim and the same is incorporated herein by reference.
Wm. G. Roe & Co., one of the claimants herein, is a corporation organized and existing under the laws of the State of Florida. The individual claimants are both Florida residents. Prior to the instant taking, the corporate claimant was the owner in fee simple absolute of a tract of land situated on State Highway No. 81, in the Town of Coxsackie, Greene County, New York, said tract being conveyed to claimant by a deed dated *419 September 16, 1927 from William G. Roe and Rose Roe, his wife, grantors, the deed being recorded in the Greene County Clerk’s office on October 20, 1927 in Liber 248 of Deeds at page 16. This tract consisted of a parcel of approximately three acres on the north side of Highway 81, with a frontage of 400± feet on said highway. At the time of the within taking the land was vacant and unimproved except for the existence of a stone wall running generally easterly and westerly along or near the south side of said property where the same adjoins Highway 81.
At no time prior to or on the date of the instant appropriation was the corporate claimant qualified to do business in this State pursuant to the requirements of section 210 of the General Corporation Law.
On September 25,1961, after the instant taking, the remaining lands and claim for damages arising therefrom were conveyed by the corporate claimant to the individual nonresident claimants herein by a deed executed in Florida dated September 25, 1961 and recorded in the Greene County Clerk’s office on October 13, 1961 in Liber 397 at page 78.
At the commencement of the trial the Attorney-General moved to dismiss the claim on the ground that, having failed to qualify in New York pursuant to section 210 of the General Corporation Law, the corporate claimant was not a proper party plaintiff, because of the prohibition against suits by nonqualifying foreign corporations contained in section 218 of the law. The Attorney-General argued further that the acquisition of realty here by a nonqualifying corporation was ultra vires the corporation, and that the purported conveyance of the property and the claim to the individual claimants did not alter the resultant disqualification, since the corporation could not give to the individual claimants any greater rights than those possessed by the corporation.
The first issue for resolution is whether the mere ownership of vacant real property situated in New York State by a foreign corporation in and of itself constitutes “doing business” within this State so as to require qualification under the provisions of section 210 of the General Corporation Law.
The statutory policy with respect to the qualification of foreign corporations has been summarized by the Court of Appeals in the case of International Fuel & Iron Corp. v. Donner Steel Co. (242 N. Y. 224). There, the subject of the action was breach of contract, suit being instituted by a nonqualifying foreign corporation. The defense asserted was failure to qualify under the then existing provisions of section 110 of the Stock *420 Corporation Law, predecessor to sections 210 and 218 of the General Corporation Law. In reversing a judgment of dismissal entered by the Appellate Division (214 App. Div. 810) and in ordering a new trial, the majority of the court reviewed the law that had been developed in interpreting the statute, as follows: “ That the section cannot be taken literally is quite evident. A foreign corporation may transact some kinds of business within the State without procuring a certificate or submitting to control (p. 229). * * * To come within this section, the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional imdertaking; it must maintain and carry on business with some continuity of act and purpose. (Penn Collieries Co. v. McKeever, 183 N. Y. 98.) ” (p. 230).
The same considerations apply to contract claims prosecuted in this court. (Bridge’s Sons v. State of New York, 188 App. Div. 500, affd. 231 N. Y. 532; Pittsburgh & Shawmut Coal Co. v. State of New York, 118 Misc. 50.)
It has been held that investment in real estate situated in New York by a nonqualifying corporation, which realty was then leased to others also in New York State, does not constitute doing business in this State so as to defeat a contract action for rent because of the prohibition contained in the predecessor provisions of section 218. (Singer Mfg. Co. v. Granite Spring Water Co., 66 Misc. 595.) The court’s conclusion found at page 596 is particularly in point: “I do not think that every foreign stock corporation which sues on a contract made here must be presumed to be doing business in the State, especially when it has been held that the holding of real estate for investment does not mean that it is carrying on business within the meaning of our laws.”
The only exception noted was where there was proof that the foreign corporation was organized for the very purpose of taking title to or leasing land as its business. On this latter point, also, see, Laurendi v. Cascade Development Co. (5 Misc 2d 688, 689, affd. 4 A D 2d 852).
On the basis of these authorities the court concludes that the foreign corporate claimant herein, concededly not qualified under the laws of this State at the time of the instant taking, was not doing business here so as to require it to qualify and thus does not fall within the prohibition contained in section 218 of the General Corporation Law.
The afore-mentioned provisions of section 218 of the General Corporation Law are limited strictly to contract actions. (Matter of Dunkin’ Donuts v. Dunkin Donuts, 8 A D 2d 228, 232; Factor *421 & Co. v. Janel Sales Corp., 298 F. 2d 511 [C. A. 2d].) No case has been found where its application was sought, nor sustained, in an appropriation proceeding or a related condemnation or eminent domain proceeding.
This analysis forecloses the argument proffered by the Attorney-General that the corporate claimant’s acquisition of realty in New York was ultra vires so as to preclude it from prosecuting the instant claim. As a general rule, the prohibition contained in section 218 of the General Corporation Law is the only penalty imposed against a foreign corporation for doing business without the required authority. (Mahar v. Harrington Park Villa Sites, 204 N. Y. 231; Matter of Dunkin’ Donuts v. Dunkin Donuts, supra.) Ample statutory authority exists to permit the Attorney-General to bring an action against a non-qualifying foreign corporation to restrain it from exercising corporate rights or privileges not granted to it or which violate the laws of this State. (See General Corporation Law, §§ 83-85, 219; Business 'Corporation Law, § 109.) Immunity from civil suit in New York on the ground that the foreign corporation is not doing business here does not preclude the invocation of investigatory machinery by the Attorney-General to determine whether it is violating State laws. (Matter of La Belle Creole Int. v. Attorney-General, 10 N Y 2d 192.) Thus the defense asserted of acts ultra vires the corporation is insufficient in law, since the Attorney-General has an exclusive statutory remedy to enjoin such activities. The corporate claimant’s constitutional right to just compensation for the instant appropriation may not be said to be forfeited by the failure of the Attorney-General to invoke the statutory remedies available to it to determine whether in fact the initial acquisition of the realty in issue by the corporation was ultra vires. Such a result would be repugnant to traditional concepts of fair-dealing and would interject constitutional questions into the instant claim, which need not be decided to dispose of this litigation.
Since the corporate claimant is a proper party plaintiff, so also are the individual claimants by reason of the afore-mentioned conveyance. The Attorney-General conceded that mere diversity of citizenship does not deprive nonresident individuals from acquiring property in New York and asserting their constitutional right to just compensation when their property is appropriated by the defendant.
One final point remains for disposition. The court is aware of the change in the law regarding actions or special proceedings by unauthorized foreign corporations contained in section 1312 of the Business Corporation Law. This section prohibits the *422 maintenance of any action or proceeding by an unqualified foreign corporation unless and until it qualifies and makes restitution of all fees, penalties and franchise taxes for those years in which it did business without authority. As noted in the Legislative Studies and Reports annotation to the statute, “ The prohibition is not limited to actions on contracts made in this state.” (McKinney’s Cons. Laws of N. Y., Book 6, Business Corporation Law, p. 377.)
Since the effective date of this legislation is stated to be September 1, 1963 and this date is subsequent to the date of the instant taking and the claim filed to recover damages flowing out of that taking, the court concludes that section 1312 has no application to the instant claim.
This conclusion is confirmed by the language contained in subdivision (d) of section 103 of the Business Corporation Law, which provides in substance that such act shall not affect any cause of action or special proceeding which on the effective date of the act is accrued, existing or pending, but such an action or proceeding may be asserted or defended as if the act had not been enacted.
The gravamen of claimants’ action is that the instant appropriation created a change in grade such that the remaining lands bordering on Highway 81 as relocated were rendered inaccessible from that highway. Thus claimants urge that they are entitled not only to damages for the direct taking but for consequential damages resulting from the alleged loss of access.
The court finds that the highest and best use of claimants’ property both before and after the instant taking was for limited residential development of the frontage along Route 81.
The court further finds that the taking, approximately three quarters of an acre, consisted of 117± feet of frontage on the east end of claimants’ property line and 85 ± feet on the west end; the same constituting front footage contiguous to Route 81. Claimants’ frontage was not lessened by the taking, which caused a reduction in depth along that portion of the claimants’ land fronting on the highway.
Prior to the appropriation claimants’ property fronting on the highway was not level with the highway, but varied in grade from four to five feet above grade at the westerly property line measured from the highway to the highway “crown”, then became level, the center area being about at or below grade, and the grade sloped upward five or six feet at the easterly property line.
The resultant taking, the court finds, did not alter the variable level of grade of the property line with respect to the highway *423 to any appreciable extent, except insofar as to straighten a pre-existing curve in the highway south of claimants’ property line. This finding precludes any award based on loss of access, since there was no proof that the change of grade was such as to make claimants’ property inaccessible to the existing highway. There is no question that the defendant must compensate a property holder for the loss of access to an abutting highway which results from a change in grade. (Evans v. State of New York, 21 A D 2d 173.) However, damages resulting from mere circuity of access are considered damnum absque injuria. Selig v. State of New York (10 N Y 2d 34) cited with approval but distinguished by the court in Evans (supra). Here claimants’ proof is lacking insofar as loss of access is concerned, though there is evidence that the grade at one end of the property is now higher and building a driveway there would require some reduction in that grade, and, therefore, cause increased cost for such a driveway.
The court finds that the fair and reasonable market value of the subject property before the taking was $1,000; that the fair and reasonable market value of the subject property after the taking was $500; and that the amount by which claimants have been damaged is $500, which represents $300 direct damage and $200 consequential damage. Both sides agreed that $300 was the fair market value of the land actually appropriated. The claimants are awarded the sum of $300 as direct damages, and $200 as consequential damages from the change in grade with interest thereon from June 27, 1961 to December 27, 1961 and from January 25, 1962 to the date of entry of judgment herein.
The court has viewed the property with representatives of the respective parties.
The award to claimants herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.