THE PACIFIC LUMBER COMPANY, OF ILLINOIS, Appellant, v. THE JAMISON LUMBER & SHINGLE COMPANY, Respondent.

In the Kansas City Court of Appeals, January 29, 1923.

1. **APPEAL AND ERROR: Judgment: Judgment of Trial Court Must be Affirmed if There is Any Theory upon Which it Can be Upheld.** Where the answer was a general denial, coupled with the defense that plaintiff was a foreign corporation and not licensed to do business in the State, to which no reply was filed, the case being tried by the court, a jury having been waived, and no instructions asked or given, the judgment of the court for defendant must be affirmed if there is any theory upon which it can be upheld.·

2. **——: ——: Corporations: Before Finding of Trial Court Can be Reversed, Record Must Show Conclusively That Foreign Corporation Was Not Doing Business or That There Was no Evidence from Which it Could be Inferred.** Where trial court found that plaintiff was not entitled to recover because evidence showed plaintiff was a foreign corporation which had not complied with sections 9792 and 9793, Revised Statutes 1919, requiring it to have a license to do business in this State, before finding can be reversed, record must conclusively show that plaintiff was not doing busi-

ness or that there is no evidence from which trial court could reasonably infer that it was.

3. ———: ———: ———: ———: **Where Finding of Trial Court that Plaintiff Was a Foreign Corporation Doing Business in State Without a License Was Supported by Evidence, it Will Not be Disturbed.** In an action to recover damages for breach of contract, where defense was a general denial, coupled with the defense that plaintiff was a foreign corporation and not licensed to do business in this State, and the evidence showed more than the maintenance of an office in the State merely for the convenience of plaintiff's traveling salesmen in writing up their orders and attending to their correspondence, the finding of the trial court, that plaintiff was a foreign corporation doing business in this State without a license, being supported by the evidence will not be disturbed.

Appeal from the Circuit Court of Jackson County.— *Hon. Thos. B. Buckner,* Judge.

AFFIRMED.

*Edwards, Kramer & Edwards* and *G. C. Weatherby* for appellant.

*John C. Grover* for respondent.

TRIMBLE, P. J.—Defendant, being under contract to purchase of plaintiff three cars of California redwood lumber, breached the contract by afterwards cancelling the order and refusing to accept the lumber should plaintiff ship it. Thereafter this suit was brought to recover damages for the breach based upon an alleged decline in the market price from the contract price. In other words, plaintiff seeks to recover the difference between the contract price and the market price at the time of the breach.

The answer was a general denial coupled with the defense that the plaintiff, being a foreign corporation, was not licensed to do business in Missouri. There was no reply filed.

The case was tried by the court, a jury being waived. At the conclusion of the evidence the court rendered

judgment for defendant and, in doing so, made an order to "let the record show" that the court held plaintiff was not entitled to recover "because the evidence shows it (plaintiff) is a foreign corporation which has not complied with the laws to do business in this State; also that plaintiff's evidence does not show more than nominal damages." Thereupon the plaintiff appealed.

There were no instructions asked or given. Consequently, the judgment of the trial court must be affirmed if there is any theory upon which it can be upheld.

The breach of the contract by defendant is not controverted, and it is admitted that plaintiff is a foreign corporation and has no license to do business in Missouri. As we interpret the record, the court held that the plaintiff was "doing business' in Missouri within the meaning of our statutes (Secs. 9792-3, R. S. 1919) requiring the taking out of a license and providing, as one of the penalties for a violation thereof, that no action can be "maintained" on the contract; also that the court found from all the evidence that there was no decline in the market price at the date of the breach and consequently plaintiff could not recover more than nominal damages. If the court was wrong in holding that plaintiff could not maintain the suit because it had no license, then, even though the court was right in holding that upon the whole evidence there was no decline in market price, the judgment must nevertheless be for plaintiff for one cent, or nominal damages, for the conceded breach, which would carry with it a judgment for costs in plaintiff's favor. So that the first question for us to settle is whether the court erred in holding that plaintiff was "doing business" in the State in the sense that required a license.

Plaintiff, an Illinois corporation, was located in Chicago. The mills which manufactured its lumber were in California; and from its headquarters in Chicago plaintiff was engaged in selling and distributing at whole-

213 M. A.—8

sale its product. Defendant was a corporation of Missouri engaged at Kansas City in the lumber business.

On April 20, 1920, the defendant, having been solicited by plaintiff's agent, Bannister, at Kansas City, gave to him a written "original order" addressed to "Pacific Lbr. Co. of Illinois, Grand Ave. Temple" for the cars of lumber, involved herein, to be shipped to defendant at Council Bluffs, Iowa (no route named), prices f. o. b. Council Bluffs "on 55 ¢ rate," using "straight" bill of lading to purchaser, shipments to be made in April or May, 1920. Bannister took the order to his office in the Grand Avenue Temple Building in Kansas City and, to use his own words, "wrote it up" in duplicate, sending the original of what he wrote up to the plaintiff at Chicago and the carbon copy thereof to the defendant. His evidence shows that what he did was to make two copies of the order given him one of which he sent to plaintiff and the other to the defendant. Upon receipt of the copy sent to Chicago, plaintiff modified the terms therein by writing its acceptance thereof across at Council Bluffs, f. o. b. Scotia, California, prices based on 55 ¢ rate, and shipments to be made in "May, June or July or sooner at mill's convenience." Acknowledgment or confirmation of the order as thus modified was sent in duplicate to defendant by plaintiff at Chicago, and the defendant signified its consent to the changed terms whereby the cars were to be shipped to defendant the face of one of the duplicates and returning it by mail to plaintiff at Chicago.

On June 8, 1920, before the cars in controversy were shipped, defendant requested Bannister, the plaintiff's Kansas City agent, to hold up the shipment for awhile. The record shows that Bannister agreed to take the matter up with the Chicago office, he saying he had no authority to agree to hold the shipment up. Further disclosure as to what was done by Bannister was obviated by a statement on the part of defendant that no question would be made about delay in delivery, as the

defendant had requested withholding of shipment until further orders.

The plaintiff, not having heard anything further from defendant as to when the shipments should be made, wrote a letter, on August 16, 1920, from its Chicago office to the defendant asking for shipping instructions. On August 18, 1920, defendant, in a letter addressed to plaintiff at Chicago, cancelled the order and refused to take the cars. On September 13, 1920, defendant mentioned the matter to Bannister again and the latter told defendant he had no authority to agree to the cancellation, and he didn't know what plaintiff would do about it nor whether it would bring suit or not, but that it might; and he suggested to defendant that it settle the matter, to either take the lumber or make some settlement, but defendant refused.

The record discloses the following further facts, gleaned principally from a cross-examination of plaintiff's witnesses:

That Bannister for two years and a half was the plaintiff's "salesman" for the territory of Missouri, Kansas and Oklahoma; that the office he occupied was in the Grand Avenue Temple Building in Kansas City, Missouri; that plaintiff's name was on the door, and it maintained the same, paying the rent therefor, owning the furniture and office fixtures, and paying the stenographer's salary and other office expenses; that the plaintiff's name was in the telephone directory, and the letter-heads used by Bannister were the letter-heads of "The Pacific Lumber Company of Illinois, General Eastern Sales Office, 11 So. LaSalle Street, Chicago. Quick Shipment Depot, 3612 So. Morgan St., Chicago." At the lower left-hand corner of this letter-head were the words "Reply to Grand Avenue Temple Building, Kansas City, Mo."

The evidence was further that Bannister solicited orders "in Kansas City and around here; that he took those orders and sent them in to the plaintiff at Chicago; that the orders he took were subject to the con-

firmation of the plaintiff at Chicago; that no stock of any kind or property, except the aforesaid office furniture and fixtures, was kept here by the defendant; that he did not receive pay for any lumber, he simply had offices where he solicited orders and sent them to the Company; that he had no right to fix or change prices.

The evidence in the record further shows that after Bannister left the employ of the plaintiff company Mr. Blythe came to Kansas City and succeeded Bannister in the Kansas City office; that files and records were contained therein and that in order to ascertain and testify to the market price of lumber at the time of the breach, Blythe searched those files and records; and that at the time of the trial the aforesaid office was maintained by plaintiff for Blythe and that neither he nor Bannister were allowed to represent anybody else except plaintiff and no other company shared said office.

The deposition of Nevin the vice president and sales manager of the plaintiff was introduced by plaintiff on the question of the decline in market price, and from defendant's cross-examination of him, it appears that the plaintiff, "The Pacific Company of Illinois," is a subsidiary concern of the parent corporation "The Pacific Lumber Company of San Francisco, California;" that Nevin had been connected with the parent company for seventeen years; that he had "had charge of their different plants at one time and another;" that he was now "Vice-president and sales manager" of the Illinois corporation and had been Vice-president for the past eighteen months; that for a period of about two years he had had charge of the parent company's eastern sales, and prior to that time, for a period of six or eight years he "exercised authority over eastern sales and all of their sales." He also testified to the maintenance of the office in Grand Avenue Temple, and of Bannister and later Blythe being in sole charge thereof and that they were not allowed to represent anybody else but the Pacific Lumber Company of Illinois.

The foregoing sets forth in somewhat minute detail

the evidence bearing on the question of whether plaintiff
was "doing business" in Missouri in the sense that re-
quires a license. The burden of showing that it was
"doing business" in Missouri was on defendant. But
the judgment of the trial court is that plaintiff was doing
business in the State within the above meaning. Hence,
before we can reverse that finding the record must show
*conclusively* that it was *not* so doing business or that
there is *no* evidence from which the trial court could rea-
sonably infer that it was.

As hereinbefore stated, the plaintiff filed no reply
denying the charge set up in the answer as a defense,
and all the evidence bearing on the question is what de-
fendant was enabled to draw out of plaintiff's witnesses
on cross-examination. Plaintiff vouchsafed no further
disclosures than it had to on that subject. We do not
base our decision however upon the theory that by filing
no reply plaintiff admitted it was doing business in Mis-
souri. Plaintiff says the case was tried as if a reply were
filed, and this may be true, at least in the sense that de-
fendant did not regard the charge as admitted by the
pleadings but thought it necessary to introduce evidence
on the question. At the same time, as said above, all the
evidence on the subject was what defendant could "cork-
screw" out of plaintiff and the latter made no effort to
enlighten the court on the facts which were brought out.
So that if the facts elicited were such as the court might
reasonably draw the inference that plaintiff was doing
business in this state, then the judgment cannot be dis-
turbed.

Now, it appears that plaintiff maintained an office
in this State in which it kept continuously a *resident*
agent, which plaintiff's witnesses *say* had no authority
to do aught but solicit orders and send them in for con-
firmation, and that these agents did not *keep on hand*
any lumber for sale and collected no pay; yet one of
these agents admitted on cross-examination that from
the office in Kansas City he *"sold lumber* and solicited
lumber in all the States around here" and "in this

territory," for the Pacific Lumber Company. The plaintiff did not see fit to explain the facts as to the lumber thus sold by the agent; and the nature of the business done does not require a stock of lumber to be *kept on hand by* the agent in order to sell it. Cars of lumber could be sent to this State to the agent and he could sell the car without keeping any of it on hand. Again, the fact that the agent's territory comprised the States of Missouri, Kansas and Oklahoma and that replies to their letters should be sent to the Kansas City office and other facts hereinbefore stated would imply or at least could induce in the mind of the court that plaintiff's *resident* agent thus maintained in its Kansas City office was something more than a traveling salesman and that the business done by him was something more than the *mere* solicitation of orders to be confirmed by the plaintiff in Illinois. The original order taken by Bannister from defendant said nothing about it having to be confirmed by plaintiff and apparently it was the usual order blank used.

We do not say that the maintenance of an office in this State *merely* for the convenience of plaintiff's *traveling salesmen* in writing up their orders and attending to their correspondence, and where such salesmen did not transact any business of the Company in this State except to solicit orders and send them in for approval, would constitute a doing of business in this State such as to require a license. It has been held that the maintenance of an office for this purpose *only,* does not change the rule in regard to business done solely through "traveling salesmen." [12 R. C. L. 77.] What we do say is that in this case we cannot declare the trial court had no evidence from which it could find that plaintiff was doing business in this State in the sense requiring a license. In the light of the evidence that was disclosed, coupled with the fact that the plaintiff did not see fit to deny, remove or explain away the unfavorable inference that might be drawn from that evidence, we cannot disagree with the trial court and disturb the judgment. In

the situation here disclosed, the court could reasonably find that plaintiff had established an *agency* within our State limits from which it transacted or carried on at least a part of the business for which it was organized. If so, we have no authority to disturb the judgment as this is the *crucial test* of the question whether a corporation is doing business in the State. [Vaughn Machine Co. v. Lighthouse, 71 N. Y. Supp. 799, 801; Nevens v. Worthington, 150 Mich. 580, 588; 14a C. J. 1270.] The sale of lumber involved in this suit was not an isolated transaction but was a part of the regular business done by the company and originating in the agency maintained by defendant in this State. Consequently, the judgment cannot be set aside on the ground that this particular contract was finally consummated between the plaintiff in Chicago and defendant in Missouri.

As we view it, we are without authority to disturb the judgment on the question considered; and as this disposes of the case, it is not necesary for us to pass upon whether the court was justified in holding that there was no decline in the market price of the lumber at the time and place of the breach. The judgment is affirmed. All concur.