IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

---

### KNOXVILLE, SEPTEMBER TERM, 1897.

---

\* NEW YORK, ETC., B. & L. ASSOCIATION *v.* CANNON.

(*Knoxville.* September 18, 1897.)

1. CORPORATIONS. *Mortgage to foreign, not enforceable, when.*

A mortgage on real property, executed in this state to a foreign building and loan association which had not complied with the existing statutes prescribing the conditions upon which foreign corporations might do business in the State, is illegal, and will not be enforced by the Courts of this State at the suit of the mortgagee, although the mortgagor, as a member of such association, had acquired a vested right to the loan, and the association had assumed an absolute obligation to make the loan

---

\*The authorities as to the recognition or exclusion of foreign corporations are compiled in a note to Cone Export & Com. Co. *v.* Pool (S. C.), 24 L. R. A., 289.— REPORTER.

New York, etc., B. & L. Association *v.* Cannon.

before the statutes imposing conditions upon foreign corporations had gone into effect. (*Post, pp. 345–348.*)

Cases cited and approved: Cary Lombard Lumber Co. *v.* Thomas, 92 Tenn., 589; Milan Milling Co. *v.* Gorten, 93 Tenn., 597.

2. CLOUD ON TITLE. *Removal of invalid mortgage.*

Equity will not remove as a cloud on title, a mortgage which is invalid because the corporation had not before its execution complied with the statutes prescribing the conditions upon which foreign corporations may do business within the State, unless the complainant will do equity by returning at least the amount of the loan; but payment of unjust dues and fines will not be required, and even interest will be remitted where the facts warrant it. (*Post, pp. 348–351.*)

Cases cited and approved: Sporer *v.* Eifler, 1 Heis., 636; Bang *v.* Windmill Co., 96 Tenn., 367.

---

## FROM SULLIVAN.

---

Appeal from Chancery Court of Sullivan County. HUGH G. KYLE, Ch.

C. R. VANCE for Building & Loan Association.

C. J. ST. JOHN for Cannon.

WILKES, J.  This is a bill filed by the building and loan association to foreclose a mortgage executed on June 20, 1891, conveying the lands of Geo. P. Cannon. Subsequently to the execution of the mortgage, and on November 2, 1891, Cannon sold and transferred the same land to Fugate, and took three notes therefor for $466.66, two of which went into the hands of the National Bank of Bristol, and are

held by it as collateral for a debt due it from Cannon. Cannon afterward died, pending this litigation, and Peters was appointed administrator *ad litem* upon his estate. He was made a party to the proceeding and allowed to file a cross bill. In this cross bill, the administrator insisted upon the invalidity and illegality of the . mortgage to the building and loan association, and upon the validity of the sale to Fugate. He prayed for an attachment of the property, the appointment of a receiver to collect the rents, for a decree against Fugate for the unpaid purchase money, that the cloud caused by the mortgage to the association be removed, and a sale of the land be had to satisfy the· lien.

The Chancellor refused any relief on the original bill and dismissed it, but granted the prayer of the cross bill, and the association appealed. The Court of Chancery Appeals has considered the case, and found that the building and loan association, at the time it made the loan to Cannon and took the mortgage from him, was doing business in the State of Tennessee without complying with the Acts of the General Assembly prescribing the terms upon which foreign corporations might do business in the State, and that when the notes and mortgage were executed it was conducting its business, in the sense of said Acts, in contravention of their inhibition, and the association was not, therefore, entitled to enforce its contract or foreclose the mortgage, and in all respects affirmed the Chancellor's decree.

The building and loan association has appealed to this Court, but has filed no assignment of errors to the holding of the Court of Chancery Appeals, nor any brief pointing out specific errors in its decree, as is the proper practice. We have, however, considered the case upon its merits, under the assignments and briefs filed in the Court of Chancery Appeals.

The first question of real controversy in the case is whether the loan made, and mortgage taken in this case by the building and loan association, were, at the time when made, in contravention of law.

The Court of Chancery Appeals find that Cannon became a stockholder and applied for his loan before the Acts in question were passed, but that the loan was made and mortgage executed, in the ordinary and regular course of the association's business, long after their passage, and without a compliance with them, though the association had full knowledge of them.

It is argued that Cannon, having become a stockholder in the association before the Acts were passed, with a view to becoming a borrower and for that purpose, and having made his application for a loan likewise before the Acts passed, acquired a vested right to the consummation of the loan, and the association became legally obligated to complete it, and it was also unfinished business which the association had a right, and which was its duty, to finish, notwithstanding the Acts of the Legislature. If we

were to grant that the borrower had a vested right to the loan, and the association had a legal obligation to consummate it, still, it must follow that the contract could be entered into, and the loan and mortgage made, only in compliance with the law. There was nothing to prevent the association from complying with the statutes, and thus placing itself in the attitude where it could legally make the loan and take the mortgage if it were under obligation to do so, as it claims.

We think it cannot be considered that the association and Cannon were winding up an old transaction and unfinished business, but the association, as found by the Court of Chancery Appeals, was entering into new contracts, and, through a local board, doing business in the sense prohibited by the statute, with full knowledge of it and in defiance of its prohibition. Under this finding of facts, the Court of Chancery Appeals was correct in holding that the contract was illegal, and could not be enforced by the Court, and in refusing to foreclose the mortgage of the building and loan association. *Carey Lombard Lumber Co.* v. *Thomas*, 8 Pickle, 589; *Milan Milling Co.* v. *Gorten*, 9 Pickle, 597.

The decree of the Court of Chancery Appeals is affirmed as to this feature.

A question remains, however, whether the complainant in the cross bill, to wit, Peters, administrator of Cannon, is entitled to the relief which has been granted to him by the Court of Chancery Appeals.

We have already held that he and the heirs of
Cannon can successfully defend against the collection
of the note and the enforcement of the mortgage of
the building and loan association, upon the ground
that the association is seeking to enforce an illegal
contract.   But, in his cross bill, the administrator
seeks not only to defend to this extent, but further,
to have the cloud upon the title to the land caused
by the mortgage removed, and to have the land
sold to enforce the lien against purchaser Fugate
for the purchase money on the sale to him.   This
is affirmative relief asked as against the building
and loan association, to wit, the cancellation of its
mortgage and removing it from the land as a cloud
upon the title.   It also seeks affirmative relief
against Fugate to the extent of a collection of the
notes given by him by a sale of the land therefor.
This sale would, perhaps, be unavailing, and cer-
tainly embarrassed, unless the cloud created by the
mortgage is first removed.   We are of opinion that
this can only be had upon equitable terms.   The
Court may refuse to foreclose the mortgage, because
it is illegal; but, in doing so, it would simply re-
fuse to give the building and loan association any
relief, would dismiss its bill and leave the parties
in *statu quo*.   But when it is asked to grant the
further relief of setting aside the mortgage because
of its illegality, equity requires that it be done upon
such terms as may be just and proper.

The principle is that a Court of Equity will

shield a defendant against the enforcement of an illegal contract and leave him in *statu quo*, but it will not grant the defendant active, aggressive aid to set aside and cancel such contract except upon condition that he do equity. In this case, Cannon received from the building and loan association $1,200, which he got the benefit of. He has paid back, of this amount, to the association $224.40. Neither he nor the bank nor his administrator for him can require the notes and mortgage to the association to be canceled, except they pay back the amount he has actually received. We require no interest upon this sum, because of the peculiar facts of this case, and because the demands of the association, under the facts, as to dues and fines were unjust, and it was only upon such terms that Cannon could cancel his debt, and relieve his land. This holding is in accord with the principles laid down in Story's Eq. Juris., Sec. 301; *Sporer* v. *Eifler*, 1 Heis., 636; *Bang* v. *The Windmill Co.*, 12 Pickle, 367.

Let a decree be entered reversing and modifying the decree of the Court of Chancery Appeals, to the extent that the bill of complainant building and loan association is dismissed, and the association is taxed with all the costs of this Court and the Court below.

H. G. Peters, administrator of Cannon, could have had the relief prayed in his cross bill against the building and loan association if he had repaid, or tendered to, the association the sum of $975.60.

The Clerk of said Court will proceed to sell said land, unless the purchaser, Fugate, shall, within sixty days, pay the purchase money notes and interest. The said sale to be on a credit of six and twelve months, with security, and free from any right of redemption, and he will pay out of the net proceeds, after retaining expenses of sale, the said sum of $975.60 to the building and loan association, with interest from date, and the balance he will pay to the Bristol National Bank to the extent of its claim on the purchase money notes held as collateral, and the remainder he will pay to said administrator, Peters.