Lloyd Thomas Co. *v.* C. N. Grosvenor.*

*(Nashville.* December Term, 1920.)

1. **CORPORATIONS.** Foreign corporation cannot sue until it complies with statutes; "doing business."

Although Acts 1877, chapter 31, Acts 1891, chapter 122, and Acts 1895, chapter 81, concerning terms on which corporations can carry on business in the State, were passed as a matter of public policy, and not for the benefit of parties sued, before a foreign corporation can sue on a contract made and performed while it was unauthorized to do business in the State in the courts of the State, it must comply with the statutes concerning transaction of business within the State by foreign corporations.  (*Post, p.* 353.)

Acts cited and construed:  Acts 1877, ch. 31;  Acts 1891, ch. 122; Acts 1895, ch. 81.

Cases cited and approved:  Lumber Co. v. Thomas, 92 Tenn., 587; Harris v. Light Co., 108 Tenn., 245;  Lumber Co. v. Moore, 126 Tenn., 313;  Cunnyngham v. Shelby, 136 Tenn., 176;  Association v. Cannon, 99 Tenn., 344;  Insurance Co. v. Kennedy, 96 Tenn., 711;  Property Co. v. Nashville, 114 Tenn., 213;  Heating Co. v. McKnight, 140 Tenn., 564.

2. **CORPORATIONS.**  "Doing business" is transaction of ordinary business continuous in character.

A corporation is "doing business" in a State when it transacts therein some substantial portion of its ordinary business, continuous in character, as distinguished from merely casual or occasional transactions.  (*Post, pp.* 353, 355.)

Cases cited and approved: Amusement Co. v. Albert, 128 Tenn., 417; Holder v. Aultman, Miller & Co., 169 U. S., 81.

---

*Authorities discussing the question as to whether soliciting trade by foreign corporation constitutes doing business with in the State, are collated in notes in 9 L. R. A. (N. S.), 1214;  23 L. R. A. (N. S.), 834;  L. R. A. 1916E, 236;  6 B. R. C., 801.

Lloyd Thomas Co. v. Grosvenor.

3. **COURTS.** Whether transaction is interstate commerce held a federal question.

Whether a transaction by a foreign corporation is interstate commerce, as distinguished from business done in the State, is a federal question, on which decisions of the federal Supreme Court are conclusive. (*Post, p.* 355.)

Case cited and approved: Heating and Ventilating Co. v. McKnight & Merz, 140 Tenn., 563.

4. **CORPORATIONS:** Contract made in one State, subject to approval by one party in another, held interstate business.

Where contract to appraise property in Tennessee was made in Tennessee by an Illinois corporation, and before becoming valid had to be approved at the office of the Illinois corporation in Chicago, the transaction was interstate business and was not a transaction of business in the State of Tennessee within the statutes respecting foreign corporations. (*Post, p.* 355.)

5. **CORPORATIONS.** Transaction of intrastate business in other matters without complying wih statutes held not to prevent suit on interstate business.

Although a foreign corporation is guilty of carrying on business within the State without complying with the statutes, it is not precluded by this from suing in the State courts on a contract constituting interstate business. (*Post, pp.* 355, 356.)

Case cited and approved: Mertins v. Hubbell Publishing Co., 190 Ala., 311.

6. **CONTRACTS.** Evidence held to show a meeting of minds concerning appraisement of property.

In an action for the agreed price of services under a contract for the appraisement of certain property, evidence *held* to show that the minds of the parties met concerning the appraisement of all the property involved. (*Post, pp.* 356, 358.)

7. **CONTRACTS.** Evidence held to show sufficient meeting of minds on nature of services to be performed.

In an action on a contract for the appraisement of certain property,

evidence *held* to show a sufficient meeting of the minds of the parties on the nature and character of the service to be performed. (*Post pp.* 358, 359.)

## FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— Hon. I. H. Peres, Chancellor.

Banks & Harrelson, for Lloyd Thomas Co.

Randolph & Randolph, for Grosvenor.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause was filed by complainant against defendant to recover the sum of $2,290.93. Complainant is a foreign corporation with its general offices located in the city of Chicago, State of Illinois, and is engaged in the business of appraising property.

On January 18, 1919, the complainant entered into a contract with the defendant, Grosvenor, who is a resident of Memphis, Tenn., by the terms of which complainant agreed to appraise for Grosvenor certain real estate belonging to the estate of the late Napoleon Hill, situated at Mammoth Springs, Ark., The contract was solicited by the traveling representative of complainant from Grosvenor at Memphis. It was agreed and understood between the defendant and complainant's representative, at the time the contract was reduced to writing and signed by the defendant, that it was not to be binding upon complainant until it had been duly approved

and accepted by it at its general office in the city of Chicago; in fact, it is so stipulated in the face of the contract. After being reduced to writing and signed by the defendant, it was forwarded by complainant's representative to its general office at Chicago, and on January 20, 1919, was duly accepted and approved by complainant and defendant notified of its acceptance.

The reason which prompted the defendant to have an appraisal made of said property was that there was to be a sale of said property for division among the heirs of Napoleon Hill, deceased, and defendant, being a son-in-law of Hill, was contemplating bidding on the property at the sale, and being unfamiliar with its value, contracted with the complainant to make an appraisal of the property to guide him in bidding on the same. The property of the Hill estate at Mammoth Springs consisted of a roller mill, hotel, a number of storehouses, gin, cotton mill warehouse, and some residences. The contract expressly provided for the appraisal of the roller mill, and it was agreed between the parties that such other property belonging to the estate, and located at Mammoth Springs, should be appraised by complainant, as defendant might desire appraised, and it was agreed that defendant would have such other of the property as he might desire appraised pointed out to complainant's engineer upon his arrival at Mammoth Springs to secure the necessary data to be used in appraising the roller mill. It was agreed that complainant should have 65 cents for each $100, "new replacement" value put on the property by complainant, which should be paid by defendant within five days after the delivery of the ap-

Lloyd Thomas Co. v. Grosvenor.

praisement to him. The "new replacement" value is the amount it would cost to replace the property new at the date of the appraisal. Complainant was also to put on the property a "sound" value, which is its actual fair cash value, after making necessary allowances for depreciation, and also a "prewar" value, which was its actual fair cash value as of date March 1, 1913. In the event the values exceeded $200,000, then complainant should have 60 cents on each $100, "new replacement" value. It was further stipulated that complainant should make the appraisal and deliver its report to defendant on or before March 5, 1919.

. It is not disputed that the appraisement was made by complainant according to the terms of the contract except in one particular to be hereinafter mentioned; and that the appraisement was delivered to defendant in April, 1919, which was after the time specified in the contract for delivery, but no question is made by the defendant on account of complainant's failure in this regard.

The two defenses set up by defendant to complainant's right to recover upon said contract are: (1) That complainant, at the time said contract was entered into, was a foreign corporation doing business in the State without having complied with the provisions of chapter 31, Acts of 1877, chapter 122, Acts of 1891, and chapter 81, Acts of 1895, respecting foreign corporations, and was therefore not entitled to enforce said contract in the courts of the State; and (2) that if complainant could recover at all, it could only recover upon a *quantum meruit*, as the minds of the parties to the contract did not meet as to the work to be performed by complainant.

· The chancellor decreed that complainant was not entitled to recover of the defendant, because it had not complied with the provisions of the statutes hereinbefore referred to respecting foreign corporations at the time the contract with defendant was entered into and the service performed, and dismissed complainant's bill. From this decree complainant has appealed to this court, and has assigned the action of the chancellor for error.

The evidence shows that after the contract was received, approved, and accepted by complainant at its home office in the city of Chicago, it sent one of its appraising engineers, Henry P. Mollarus, to Mammoth Springs, to secure data, notes, diagrams, and other information necessary to enable complainant to make a report as to the value of said property. Mollarus performed this service by measuring the buildings, making drawings of them, counting and estimating the various kinds of material in them, and the quantity of same, including the excavations, masonry work, number of brick in the walls, carpentry work, mill work, plumbing, etc.; and after this was done he sent this data to complainant's office at Chicago, where the same was assembled, the valuations of the property worked out, and a report of said values formulated, which was then forwarded to the defendant at Memphis. It is not controverted that in order to make the appraisal it was necessary for complainant to send one of its engineers to the *situs* of the property to secure this data. It is further undisputed that no part of the work necessary to make said appraisal was done in the State of Tennessee. It appears, however, that in the year 1919 the complainant

entered into eleven other contracts with parties in Tennessee, and made eleven similar appraisals of property situated in Tennessee, during said year, five of which were made in the city of Memphis, and during the ten years of its corporate existence it has made about one hundred appraisals of property in Tennessee. It is further undisputed that comlainant had not complied with the statutes of this State respecting foreign corporations at the time these contracts were made and performed, including the one now involved.

It is well settled in this State that a foreign corporation which has not complied with its statutes prescribing the terms upon which said corporation may do business in the State cannot enforce any contract in the courts of the State made and performed while such corporation is unauthorized to transact business therein. *Lumber Co.* v. *Thomas,* 92 Tenn., 587, 22 S. W. 743; *Harris* v. *Light Co.,* 108 Tenn., 245, 67 S. W., 811; *Lumber Co.* v. *Moore,* 126 Tenn., 313, 148 S. W., 212; *Cunnyngham* v. *Shelby,* 136 Tenn., 176, 188 S. W., 1147, L. R. A., 1917B, 572; *Association* v. *Cannon,* 99 Tenn., 344, 41 S. W., 1054; *Insurance Co.* v. *Kennedy,* 96 Tenn., 711, 36 S. W., 709; *Property Co.* v. *Nashville,* 114 Tenn., 213, 84 S. W., 810; *Heating Co.* v. *McKnight,* 140 Tenn., 564, 205 S. W., 419.

The statutes respecting the terms upon which foreign corporations may do business in the State were passed as a matter of public policy, not so much for the benefit of the parties sued, as in the interest of the people at large.

A corporation is doing business in a State when it transacts therein some substantial portion of its ordi-

nary business, continuous in character as distinguished from merely casual or occasional transactions. *Amusement Co.* v. *Albert,* 128 Tenn., 417, 161 S. W., 488.

In the instant case it is insisted that the ordinary business of the complainant was the making of appraisals on property, and the sending of its representative into Tennessee to solicit contracts, and later other representatives to gather the data necessary for making said appraisals, was the doing of a substantial portion of its ordinary business within the State. This is the question presented for determination.

In the case of *Holder* v. *Aultman, Miller & Co.,* 169 U. S., 81, 18 Sup. Ct., 269, 42 L. Ed., 669. it was held that under a statute of the State of Michigan making void all contracts made in that State by any foreign corporation, which had not filed its articles of association and paid its franchise tax, a contract made elsewhere than in Michigan is valid, although it was to be performed in that State. It was also held in that case that a contract is made when, and not before, it has been executed and accepted by both parties, so as to become binding upon both, and that a contract signed in the State of Michigan by the parties (one of whom was a foreign corporation which signed by its agent) stipulating that it should not be valid until approved at the principal office of the corporation in Ohio was not, when so approved in Ohio, a contract made in Michigan, within its statute invalidating contracts by foreign corporations which had not filed their articles of association and paid a franchise tax. The court held that the plaintiff's business, as carried on in pursuance of such a contract, was an interstate

commerce business, and that the plaintiff was not subject to the aforesaid statute; and the statute, in so far as it applied, or purported to apply, to foreign corporations like the plaintiff, which were doing an interstate commerce business, was in conflict with the provisions of the Constitution of the United States authorizing Congress to regulate interstate commerce.

It was held by this court in *Heating & Ventilating Co.* v. *McKnight & Merz,* 140 Tenn., 563, 205 S. W., 419, that whether a transaction by a foreign corporation is interstate commerce, as distinguished from doing business in the State, is a federal question, on which discisions of the federal supreme court must be followed by the State courts.

It is clear, therefore, that under the holding of the supreme court of the United States in the case of *Holder* v. *Aultman, Miller & Co., supra,* the contract sought to be enforced in the instant cause was not a Tennessee contract, but an Illinois contract. This being true, the service to be performed by complainant was not an intrastate transaction, but an interstate transaction, and our statutes respecting foreign corporations have no application to it. Congress alone has the power to regulate interstate commerce. This case is clearly distinguishable from *Amusement Co.* v. *Albert, supra.* The contract involved in that case was made in the State and was performed in the State.

But it is said that complainant, having entered into other contracts with parties in Tennessee for the appraisal of property situated in said State, and actually sent its agent into the State to gather data necessary to

enable it to make said appraisals, was, as to such contracts, engaged in carrying on business in the State in violation of its statutes respecting foreign corporations, and therefore cannot enforce the contract in question in the courts of the State.

We do not think this contention is well grounded. If it be conceded that the other contracts entered into by complainant with parties in the State for the appraisal of property situated in the State, and the sending of its agent here to gather data necessary to enable it to make such appraisals, amounted to a carrying on of a portion of its ordinary business in the State, that fact could not operate to prohibit complainant from enforcing the contract in question, since such contract was an interstate transaction and is protected by the interstate commerce clause of the federal Constitution. *Mertins* v. *Hubbell Publishing Co.,* 190 Ala., 311, 67 South, 275.

As to the contention of defendant that in no event can complainant recover for the entire service performed, but only upon a *quantum meruit,* because the minds of the parties did not meet on the service to be performed, we are of the opinion that this contention is not sustained by the proof.

It is insisted by defendant that it was not within the contract that complainant should appraise the cotton mill warehouse, and that complainant cannot recover for its appraisal, and the decree of the chancellor should be modified accordingly.

It is shown by the testimony of Mr. Kirberg, the representative of the complainant, who negotiated the contract with defendant, that it was agreed that defendant

Lloyd Thomas Co. v. Grosvenor.

would have his manager at Mammoth Springs to point out the property he wanted appraised, in addition to the roller mill, when complainant's engineer arrived on the ground to secure data for appraising the roller mill. This is not denied by the defendant.

Mr. Mollarus, complainant's engineer, testified that when he had about finished securing the necessary data for the appraisement of the roller mill, he went to Memphis and saw defendant in regard to the appraisement of the remainder of the property. He says that defendant told him that he would communicate with his manager at Mammoth Springs, and have him to show him (Mollarus) the other property he wanted appraised, and Mollarus says that Mr. Bellamy (defendant's manager) did, on his return to Mammoth Springs, point out to him the other property which the defendant wanted appraised, including the cotton mill warehouse. Mr. Bellamy was not offered as a witness to contradict the statement of Mr. Mollarus on this point. Mr. Mollarus further testified that defendant came to Mammoth Springs while he was securing the necessary data for the appraisement of the storehouses and cotton mill warehouse, and that he (Mollarus) had a conversation with him in his room at the hotel pertaining to the appraisement of the property, and that defendant told him that he wanted the property appraised as low as it was possible, as he wanted to bid on it at the sale; that with regard to the cotton mill warehouse defendant stated that that property was not of great value, but he wanted a value placed on it so that he would know how to bid on it.

Mr. Kirberg testified that he saw the defendant in Memphis in May, 1919, after the appraisement was completed in April of that year, and that the only complaint defendant made, at that time, of the appraisement was that the appraiser's fee was larger than he expected and thought some reduction should be made. He offered to pay the complainant $1,800 in settlement of its fee. Kirberg says that·in that conversation defendant admitted that he instructed Mr. Mollarus to include the cotton mill warehouse in the appraisement, but that complainant had placed a. higher value on it than he thought was fair.

It is also insisted by defendant that the minds of the parties did not meet on the nature and character of the service to be performed, because he did not understand that he was to pay complainant for making the appraisement on the basis of a "new replacement" valuation. He says he only wanted a "sound" value placed on the property, and that he understood that complainant's compensation was to be based on such a value.

We do not think this contention is sustained by the proof. The contract expressly stipulated that·complainant's compensation for making the appraisement was to be based on the "new replacement" value. Furthermore, notwithstanding the appraisement was made and report thereof was sent to the defendant by complainant in April, 1919, he never made any complaint that he did not understand the terms of the contract as to the compensation which complainant should receive for the work; in fact, he made no complaint whatever until some time in May, 1919, and then only insisted that complain-

ant's bill for the service exceeded his expectations, and that too high a valuation had been placed on the cotton mill warehouse. The proof, however, fails to show that the valuation placed on the cotton mill warehouse was exorbitant.

It results that the decree of the chancellor will be reversed, and a decree will be entered here in favor of complainant for the amount sued for, with interest and costs.