R. M. HOLLINGSHEAD COMPANY v. J. L. BAKER.

Western Section.   December 7, 1926.

Petition for Certiorari denied by Supreme Court April 9, 1927.

1. **Principal and agent.   Agent can not bind principal beyond authority conferred upon him.**

The power of every agent to bind his principal rests upon authority conferred upon him by the principal. Without this authority for which the principal himself by act or conduct has become responsible the agent can bind only himself.

2. **Principal and agent.   Person dealing with an agent is bound at his peril to ascertain the extent of the agent's authority.**

A person dealing with an agent is bound at his peril to inquire and ascertain the extent of the agent's authority.

3. **Principal and agent.   Evidence.   Evidence held to show agent acting without authority.**

Where a travelling salesman of the plaintiff company called on the defendant to sell him goods and the defendant wanted a contract giving him certain territory and the agent signed a contract to this effect, **held** that the defendant should have known that a mere travelling salesman was acting beyond his authority in signing such a contract and that the contract was not binding on the company.

4. **Corporations.   Contracts.   A foreign corporation not licensed to do business in Tennessee can not recover on a contract in this State.**

Where a foreign corporation has not complied with the statutes and secured a license to do business in Tennessee it can not recover upon a contract for goods sold in this State.

5. **Corporations.   Corporation held to be doing business in Tennessee.**

Where a foreign corporation had not complied with the statutes to do business in Tennessee but had stored its goods with a storage company in the State of Tennessee and then its agent took orders in the State and they were shipped from this warehouse, **held** to constitute doing business within the State and the company could not recover for the sales made in this manner.

6. **Corporations.   A corporation may recover on interstate contracts.**

The fact that a foreign corporation is illegally conducting business within the State does not prevent it from recovering on contracts which are lawful interstate contracts and the corporation may recover on all of its interstate contracts.

7. **Corporations.   Evidence.   Evidence held to show part of corporation's contracts intrastate and part interstate.**

In an action to recover for the sale of certain goods where the evidence showed that plaintiff was a foreign corporation which had not complied

with the statutes of Tennessee authorizing it to do business in Tennessee and that it maintained a warehouse in Tennessee from which some of its goods were shipped to Tennessee customers and the evidence further showed that a part of the goods bought by defendant were shipped from the warehouse but that the greater part of the goods were sold by the travelling salesman taking orders which were returned to the company out of State office where the orders were approved and filled, **held** that such orders constituted interstate contracts and were enforceable in Tennessee and the fact that a part of the sales were intrastate and could not be enforced did not prevent the company from collecting on the other accounts.

Appeal from Chancery Court; of Shelby County; Hon. D. W. De-Haven, Chancellor.

Affirmed.

McDonald, McDonald & Geo. S. Knapp, of Memphis, for appellant.

Ewing, King & King, of Memphis, for appellee.

SENTER, J. The appellant, R. M. Hollingshead Company, is a New Jersey corporation and engaged in the manufacture and sale of a line of automobile soaps, greases, polishes, etc. The defendant, J. L. Baker, conducts a business in the City of Memphis under the name and style of Baker Auto Company, owned by J. L. Baker, and engaged in selling automobile accessories, etc. In this cause the complainant sues the defendant to recover on an account for merchandise alleged to have been sold and delivered to defendant between the dates of October 19, 1923, and January 24, 1924, both dates inclusive, amounting to the sum of about $5,000. The defendant answered the bill denying that it was due and owing to complainant for the account sued on, or any other sum, and filed the answer as a cross-bill, alleging that cross-complainant had entered into a certain contract with cross-defendant, by the terms of which the cross-defendant contracted and agreed to sell to cross-complainant its line of products, at certain stipulated prices and to deliver the same in the City of Memphis and to give cross-complainant the exclusive territory of the City of Memphis and a radius of 150 miles around the City of Memphis until January 1, 1925, and would not maintain a warehouse or agency in said territory and would not put salesmen in said territory; that the cross-defendant had breached said contract by opening an agency in the City of Memphis and in putting numerous salesmen in the territory that it had specifically contracted to cross-complainant as the exclusive territory of cross-complainant, and that by reason of said alleged breach of said alleged contract upon the part of cross-defendant, cross-complainant had sustained a loss or damages to the amount of $10,000.

For convenience the parties will be hereinafter referred to in this opinion as complainant and defendant, meaning the original complainant and the original defendant.

It appears that in the latter part of September, 1923, the complainant maintained a branch office and business in the City of Atlanta, Georgia, with its main business and plant in the City of Camden, New Jersey; that also at that time complainant maintained a branch office and business in the City of New Orleans. That the State of Tennessee was included in the territory and jurisdiction assigned to and covered by the Atlanta branch and that a portion of the territory within a radius of 150 miles of Memphis, in Mississippi and Arkansas was within the territory and jurisdiction of the City of New Orleans. It appears that in the latter part of September, 1923, and prior thereto, one L. P. Newman was employed by complainant as a salesman of its products in Memphis and West Tennessee, and in his capacity as salesman he called on the defendant and solicited an order from defendant for a considerable amount of commodities manufactured and sold by complainant. It appears that at the time the order was solicited, the defendant Baker Auto Company informed the salesman Newman that it would be interested in contracting for a considerable purchase of complainant's commodities provided terms and discount could be agreed upon, and provided that it would be protected as a jobber of complainant's commodities in the Memphis territory. It also appears that a tentative order was made out and given by defendant to complainant's salesman on the usual order blank used by salesmen of complainant in taking orders from customers, and that there was printed in red type just above the signature line where the customer signed the order the following: ''This order is given in good faith and duplicate left. No countermand will be accepted. It is understood there are no conditions whatever, verbal or otherwise, except as written herein. All orders subject to the approval of the company.'' It appears that defendant desired to contract for the purchase of considerable quantity of the products of complainant, and desired terms and conditions not stipulated in the order blank, and terms which the salesman Newman was not authorized to make without referring the same to the manager of the Atlanta branch, and because of this the agent and salesman Newman wired the Atlanta branch that he desired a conference on the subject, and in reply he was invited to go to Atlanta to discuss the matter with the manager in charge of the Atlanta branch, and promptly left Memphis for Atlanta, and upon his return entered into the contract in the name of his company, the breach of which is complained of by the defendants by way of cross-bill and the making of the contract so as to bind the principal is claimed by the principal to have been unauthorized and not within the scope, or apparent scope, of the salesman's employment or agency. This alleged contract, and the alleged breach of the same, affords the basis of the cross-bill by defendant. The Chancellor at

the hearing of the cause held that under the facts, and the law applicable thereto, that the salesman Newman was not acting within the scope of his employment, or the apparent scope of his employment, in signing the contract, and that his principal, the complainant, was not, therefore, bound by the contract, and further held that there was no satisfactory evidence of any damage resulting to the defendant on account of the breach of the contract, even should it be held that the agent and salesman Newman was acting within the scope of his employment in making the contract. For these reasons the Chancellor disallowed the relief sought by the cross-bill, and dismissed the cross-bill. The action of the Chancellor in denying the defendant the relief sought under the cross-bill, and in dismissing the cross-bill, and in holding (a) that the salesman was without authority to bind complainant on the alleged contract, and (b) that no satisfactory evidence of · damage resulting to defendant from the alleged breach is made the basis of certain assignments of error on this appeal, and we will first consider and dispose of these questions.

We think it clear from the record that the salesman or agent Newman was employed by complainant as its salesman in the City of Memphis at the time of the negotiations out of which this litigation arose. We think it also clear that the defendant knew and understood that the salesman Newman was not authorized to enter into contracts for his principal, except such as were usual to a salesman employed to solicit orders for complainant's products, and that his authority as such agent or salesman was limited to the particular business of soliciting and taking orders for the line of merchandise manufactured and sold by complainant. It appears that when this salesman Newman discovered that the defendant could be interested in a considerable purchase of these commodities, but desired terms other than the usual terms, and a discount on the regular prices that was given to jobbers and not to retailers where the purchase was sufficient to warrant jobbers prices and terms, that the salesman Newman was unwilling and was without authority to agree and bind his principal, and it was for this reason that he wired the manager of the Atlanta branch for a personal interview on the subject and pertaining to this particular proposed order and business. He went to Atlanta in response to the telegram of the manager of the Atlanta branch and discussed with the manager of the Atlanta Branch the matter of terms, discount and also certain protection which the defendant wanted before placing the order. There is some discrepancy in the evidence as to just what matters were discussed between the manager of complainant and the salesman Newman at the time of Newman's visit to Atlanta. The manager of the Atlanta branch admits that he authorized the salesman Newman to

quote the prices and terms set out in the alleged contract, and the rate of discount to be allowed to defendant, and also agreed that the complainant did not contemplate establishing a branch office and business in Memphis, and that in the event such branch office should be established in Memphis prior to January 1, 1925, that complainant would protect the defendant by taking back all un- broken packages that defendant may have on hand at the price at which the same had been purchased by defendant. He denies that he authorized the agent Newman to enter into a contract with the defendant by the terms of which the defendant would be given the exclusive territory of Memphis and the territory contiguous thereto or within a radius of 150 miles of Memphis, and that any provision in the contract to this effect was unauthorized by complainant or any authorized officer or agent of complainant.

We are of the opinion that the Chancellor correctly found the fact to be that the alleged contract signed by Newman insofar as the same. undertook to give to defendant the exclusive sales territory of Memphis and a radius of 150 miles of Memphis was unauthorized, and in so doing he was not acting within the scope or the apparent scope of his authority. The complainant established a branch of its business in Memphis on January 1, 1925, but did not maintain offices or a branch plant in Memphis under the supervision of a manager until January 1, 1925. On October 5, 1923, Mr. H. E. Moody wrote the defendant the following letter which strongly corroborates the contention of complainant:

"October 5, 1923.

"Mr. John L. Baker,
"Baker Auto Company,
"Memphis, Tennessee.
"Dear Sir:

"Referring to recent order given us for a general line of our package goods products and other products would say that we agree to protect you in the matter in a manner that will be entirely satisfactory to you, even to accepting the return of unbroken cases on hand should our company open a regular branch in Memphis prior to January 1, 1925.

"As far as I know the company has no intention whatever of opening a branch in Memphis any time in the near future.

"Thanking you for the business given us, we are,
"Yours truly,
"The R. M. Hollingshead Company,
"H. E. Moody, Mgr."

It appears that upon the return of the salesman Newman from his visit to Atlanta to confer with the manager of the Atlanta plant, the contract relied upon by defendant in the cross-bill was signed by

the salesman Newman in the offices of the defendant in Memphis, and that the instrument was prepared in the offices of defendant and written on the stationery of defendant. The defendant did not have this alleged contract ratified and approved by the manager of the Atlanta branch or anyone else in authority for complainant, but seems to have accepted the same from the salesman Newman, without inquiring of the Atlanta manager or of the home office of complainant as to the extent of the authority of the salesman Newman to bind complainant on the alleged contract. It was certainly apparent to defendant that the terms, provisions and conditions of the alleged contract were unusual for the authority of a mere salesman; especially so much of the alleged contract as purported to give to defendant the exclusive territory of Memphis and a radius within 150 miles of Memphis. This certainly would not come within the scope of the authority of a mere salesman, or within the apparent scope of the employment of one who is employed to solicit and receive orders for merchandise to be sold and delivered by the principal. It is very evident from the record in this case that the defendant did not consider that Newman had the authority to bind the complainant on any contract or terms unusual to the ordinary soliciting and taking of orders for the line of products manufactured and sold by complainant.

In 31 Cyc., page 1322, it is said:

"It is fundamental in the law of principal and agent that the power of every agent to bind his principal rests upon the authority conferred upon him by the principal. Without this authority for which the principal himself, by act or conduct, has become responsible, the agent can bind only himself. Every person, therefore, who undertakes to deal with an alleged agent is put upon inquiry and must discover at his peril that such pretended agent has authority, that it is in its nature and extent sufficient to permit him to do the proposed act, and that its source can be traced to the will of the alleged principal."

Many cases both in this State and in other jurisdictions could be cited in support of the rule to the effect that a person dealing with an agent is bound at his peril to inquire and ascertain the extent of the agent's authority. As was said in the case of Sumpter Lumber Company v. McKinstry & Co., 8 App. Cas., 165, "It is the duty of a person dealing with a known special agent to inform himself as to the extent of the agent's authority." In Frank v. Wright, 140 Tenn., 535, it is said by the court: "An agent cannot create authority in himself to bind another as employer by asserting his authority to do the particular act, or say that in doing so he was acting within the line of his duty to such other as his general employer."

In Southern Railway Company v. Pickle, 138 Tenn., it is said: "An agent's express authority is that which the principal gives to him in direct terms, either orally or in writing; implied authority embraces all powers which are necessary to carry into effect the granted power, in order to make effectual the purposes of the agency."

The order blank upon which the defendant gave the first order and which order was signed by the defendant on September 28, 1923, contained the printed words in red letters hereinbefore referred to and quoted, and which specifically called the attention of the defendant to the limited authority of the salesman Newman. We think it clear from all the facts and circumstances disclosed by the record that the defendant knew the limited authority of the salesman Newman at the time the order was solicited, and at the time the alleged contract was signed. Mr. Baker, in his deposition, states that he was not satisfied with the authority of the salesman Newman to bind the complainant, and knew that Newman made the trip to Atlanta. The letter written by the manager of the Atlanta branch to the defendant of date October 5, 1923, was of itself sufficient to put the defendant upon notice that the Atlanta branch understood that the order was received and accepted, and the business relations between defendant and complainant commenced under an agreement as to prices and terms (meaning the dates bills would become due), and the rate of discount, and the prepaying of freight, and also that in the event a branch plant or business would be established in Memphis before January 1, 1925, that defendant could return unbroken packages and receive credit for the same. The order originally taken and dated September 28, 1923, and signed by L. P. Newman as salesman and by Baker Auto Company, contains the written words in the face of the order "terms on this order 90 days F. O. B. Memphis. Jobber's discount 25 per cent." The typewritten bill or invoice covering this same order and for the same articles dated October 19, 1923, at the top of the invoice has printed thereon "2 per cent ten days; 30 days net," and written in red ink immediately under the above is the following: "90 days F. O. B. Memphis." This order and the invoice covering this order aggregated the sum of $3,690.48. From this it would appear that the original order covering the first sale was taken on September 28, 1923, and was taken subject to the approval of the complainant, and it was with reference to this proposed purchase by defendant that the salesman Newman, who solicited the order, went to Atlanta to confer with the manager of the Atlanta branch, resulting in the order being accepted and special terms agreed to.

While we are of the opinion that the alleged contract relied upon by defendant in his cross-bill was the unauthorized act of the salesman of complainant, and not within the scope or apparent scope of

his employment, we, however, agree with the conclusion reached by the Chancellor that if this alleged contract was in fact binding upon the complainant, and if it had, in fact, been broken by the complainaint, that the measure and elements of damages resulting to the defendant are not satisfactorily shown by the proof, and no cross-recovery or relief could therefore be had.

It results that all assignments of error based upon the action of the court in dismissing the cross-bill are overruled.

The next, and more serious question presented on this appeal is raised by the assignments of error based upon the action of the Chancellor in holding that the complainant, a foreign corporation incorporated under the laws of the State of New Jersey with its principal offices and place of business in Camden, New Jersey, was entitled to maintain its action on the account sued on, to the extent of all the merchandise sold and delivered to the defendant and shipped from points outside of Tennessee, to the defendant in Tennessee, without complying with the Tennessee statute, and the requirements of the Tennessee law in the matter of domesticating the corporation in this State by filing its articles of incorporation, paying the incorporation fees, etc., as provided by the laws of the State of Tennessee.

It appears that the complainant had stored in Memphis with the Rose Storage Company a quantity of its bulk goods, and that where bulk goods were sold to customers in Memphis or in the Memphis territory, the Rose Storage Company on the order of complainant would release goods or ship the same out of its storage warehouse in Memphis. It also appears that the package goods, and perhaps all goods other than bulk goods put up in barrels, half-barrels, or kegs, were shipped either from Camden, New Jersey, or Atlanta, Ga. It is contended for the defendant that this constituted doing business by complainant in the State of Tennessee, and that on account of and because the complainant had not complied with the requirements of the Tennessee statute on the subject of domesticating in this State, that its contracts were not enforcible in this State, and that complainant could not, therefore, maintain its action on the account.

It is not denied by the defendant that it received the merchandise covered by the account sued on. It is insisted that the contracts by which the purchases were made were Tennessee contracts. The Chancellor held, and we have concurred in the conclusion reached by the Chancellor, that the alleged contract which defendant relied upon in the cross-bill, was unauthorized by the complainant and not enforcible or binding upon the complainant. It appears that all orders given for the products bought by the defendant were on the order blanks of the complainant, and not binding until approved

by complainant. The taking of the order by the salesman in Tennessee, was made subject to the approval of complainant, and all the orders were approved by complainant at its Atlanta branch or its main office in Camden, N. J. The Chancellor held that for all business handled through the Rose Storage Company in Memphis, or shipments made or delivered by the Rose Storage Company, in Memphis, constituted intrastate business, and the complainant not having complied with the Tennessee law as provided for foreign corporations doing business in Tennessee, could not maintain the action on that part of the account where the goods were delivered or shipped through the Rose Storage Company. This amounted to about $908 of the aggregate account sued on. The Chancellor further held that all orders given by defendant where the merchandise was shipped either from Atlanta, Ga. or Camden, N. J., constituted interstate shipments, and for which the complainant could maintain its action in this State without filing its articles of incorporation and complying with the Tennessee law on the subject. This second holding of the Chancellor as to the shipments made from points outside of the State, and allowing the complainant to recover for the same, is made the basis of the other assignments of error by the defendant. The Chancellor decreed a judgment in favor of complainant and against the defendant for the sum of $4,029.62, with interest from the date of the filing of the bill, April 28, 1924, at the rate of 6 per cent per annum, amounting to the sum of $515.94, making a total amount of recovery, principal and interest, $4,545.56, and it is from this judgment that the defendant has appealed. The complainant did not appeal from that portion of the decree denying a recovery on that part of the account for the merchandise delivered through the Rose Storage Company in Memphis. Hence, that part of the decree of the Chancellor holding that the complainant could not recover for the amount of merchandise sold and delivered by the complainant handled through the Rose Storage Company in Memphis because complainant had failed to comply with the Tennessee laws with reference to foreign corporations doing business in the State of Tennessee, is not presented to this court for determination on this appeal. The only question left for determination on this appeal is with reference to that part of the decree of the Chancellor holding that complainant is entitled to recover of the defendant for the merchandise sold and delivered to defendant where the shipments were made from points from without the State, and sold on the orders solicited by the salesmen of complainant subject to the approval of complainant.

Appellee admits that it was a foreign corporation, and that it was not qualified to do an intrastate business in Tennessee, as held by the lower court. It is also conceded by appellee that the mer-

chandise sold by complainant to the defendant and delivered to defendant through the Rose Storage Company in Memphis, constituted intrastate business by storing merchandise in the City of Memphis because of its failure to comply with the Tennessee statutes on the subject of a foreign corporation doing business in Tennessee.

It is contended for appellant that since complainant was doing an intrastate business by storing merchandise in the city of Memphis and having orders to customers filled by the Rose Storage Company, and therefore conducting a business in Tennessee without having complied with the Tennessee law governing foreign corporations doing business in this State, it could not maintain an action on any part of the account sued on, and would be repelled by a State court.

As was said in the case of Lloyd Thomas Co. v. Grosvenor, 144 Tenn., 353, "It is well settled in this State that a foreign corporation which has not complied with its statutes prescribing the terms upon which said corporation may do business in the State cannot enforce any contract in the courts of the State made and performed while such corporation is unauthorized to transact business therein. Lumber Co. v. Thomas, 92 Tenn., 587, 22 S. W., 743; Harris v. Light Co., 108 Tenn., 245, 67 S. W., 811; Lumber Co. v. Moore, 126 Tenn., 313, 148 S. W., 212; Cunningham v. Shelby, 136 Tenn., 176, 188 S. W., 1147; L. R. A., 1917B, 572; Association v. Cannon, 99 Tenn., 344, 41 S. W., 1054; Insurance Co. v. Kinnedy, 96 Tenn., 711, 36 S. W., 709; Property Co. v. Nashville, 114 Tenn., 213; Heating Co. v. Mc-Knight, 140 Tenn., 564, 205 S. W., 419."

In the same case the court said, "The statutes respecting the terms upon which foreign corporations may do business in the State were passed as a matter of public policy, not so much for the benefit of the parties sued, as in the interest of the people at large. A corporation is doing business in a State when it transacts some substantial portion of its ordinary business, continuous in character as distinguished from merely casual or occasional transactions. Amusement Co. v. Albert, 128 Tenn., 417, 181 S. W., 488.

It was also held in the case of Holder v. Altman, etc., 169 U. S., 81, 42 L. Ed., 669, that under a Michigan statute making void contracts made in that State by any foreign corporation which had not filed its articles of association and paid its franchise tax, a contract made elsewhere than in Michigan is valid, although it was to be performed in that State.

In Heating & Ventilating Co. v. McKnight & Merz, 140 Tenn., 563, 205 S. W., 419, it was said that whether a transaction by a foreign corporation is interstate commerce as distinguished from doing business in the State, is a Federal question, on which decisions of the Federal Supreme Court must be followed by the State courts.

In the instant case we have a foreign corporation doing a part of its business in the City of Memphis, in that it keeps a quantity of its bulk goods on storage with a storage company, and from which stock orders are filled when sold in Memphis and adjacent territory. We are of the opinion that this constitutes doing business in the State of Tennessee, and any sales made of the products kept in storage in Memphis and deivered to' the customers in the State of Tennessee would constitute intrastate business, and· unless the complainant had complied with the Tennessee law and statutes on the subject, it could not maintain an action in the State courts on any account for such merchandise so sold and delivered. It appears in the present case that of the aggregate amount of goods sold and delivered by complainant to defendant representing the account sued on, that only $908 of the account was for goods delivered through the Rose Storage Company of Memphis. All the remainder of the account sued on represents merchandise shipped from Atlanta, Ga., or Camden, N. J., to defendant in Memphis, on orders solicited by complainant's salesman in Memphis, subject to the approval of complainant either at·its Atlanta branch or home office in Camden, N. J. The contract for the sale of this merchandise was not complete until the order, or orders, for the same had been accepted by complainant either at its branch office in Atlanta, or in Camden, N. J. ·It is true that on these shipments the freight was prepaid by the complainant, or at least on all orders amounting to as much as $1,00, if not on all the shipments made. We think that the case is controlled by Holder v. Altman, Miller & Co., 169 U. S., 81 supra, and constituted 'interstate shipments, and was, therefore, interstate transactions.

In the case of Lloyd Thomas Co. v. Grosvenor Co., supra, we have a very similar question. In that case it appears that the complainant was a foreign corporation and had not filed its articles of incorporation in Tennessee; that it entered into a contract with the defendant, who was a resident of Memphis, Tennessee, by the terms of which complainant agreed to appraise for the defendant certain real estate situated at Mammoth Springs, Ark., and that the contract for making the appraisal of this property was made by a representative of complainant in the City of Memphis, but subject to the approval of the home office in the city of Chicago, Ill. It was insisted for the defendant in that case that it was a Tennessee contract, and that although the service had been rendered by complainant to the defendant, the complainant could not maintain its action in a Tennessee court because it had failed to comply with the Tennessee statutes relative to foreign corporations doing business in this State. It also appeared in that case that the complainant, which was an appraisal company, and an Illinois corporation, had conducted business in Tennessee on other and different occasions and for other and dif-

ferent people, by making appraisements of property located in Tennessee. In that case it was held that the contention made by the defendant could not be sustained. The court said: "If it be conceded that the other contracts entered into by complainant with parties in the State for the appraisal of property situated in the State, and the sending of its agent here to gather data necessary to enable it to make such appraisals, amounted to a carrying on of a portion of its ordinary business in the State, that fact could not operate to prohibit defendant from enforcing the contract in question, since such contract was an interstate transaction and is protected by the interstate commerce clause of the Federal Constitution." Citing Martins v. Hubbell Publishing Co., 190 Ala., 311, 67 South, 275.

The only distinction that we see between the case at bar and the case of Lloyd Thomas Co. v. Grosvenor, supra, is that in the instant case all the transactions were between the same parties, while in the case of Thomas Co. v. Grosvenor, supra, the contract sued on was held to be an interstate transaction, while the other acts and business of an intrastate character were with other parties. However, we are of the opinion that the same principle is involved. When reduced to its final analysis, as we construe the holding of the court in the Thomas v. Grosvenor case, a foreign corporation which has failed to comply with the Tennessee statute on the subject may be engaged in both intra and interstate business, and such of its transactions as are of intrastate character would come within the rule and within the statute, and on which an action could not be maintained, while on all transactions of purely interstate character, such transactions would not come within the inhibitions of the State law, but would be protected by the commerce clause of the Federal Constitution.

We are of the opinion that the Chancellor was not in error in holding the defendant liable for so much of the account sued on as represented orders taken by complainant's salesman subject to the approval of complainant, and where the shipments were made from Atlanta, Ga., or Camden, N. J.

It results that all assignments of error are overruled, and the decree of the Chancellor is affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.