J. C. KEG & COMPANY
Of Zaandam, Holland,
By CLARENCE PAYNE, Agent, Plaintiff

v.

O. S. WHEATLEY, Defendant

Civil No. 230 - 1949

District Court of the Virgin Islands

Div. of St. Thomas and St. John at
Charlotte Amalie

January 21, 1952

197

JORGE RODRIGUEZ, *for plaintiff*
FRANCISCO CORNEIRO, *for defendant*

MOORE, *Judge*

This is an action for debt brought by J. C. Keg & Co., of Zaandam, Holland, a foreign corporation, Clarence Payne as agent, appearing by power of attorney, to sue in its behalf, against O. S. Wheatley, a merchant of St. Thomas, Virgin Islands, for goods and merchandise sold in the amount of $622.60. Jorge Rodriguez, Esquire, appeared for the plaintiff, and Francisco Corneiro, Esquire, appeared for defendant.

On October 3, 1946, defendant merchant ordered by letter, addressed directly to plaintiff corporation in Holland, twenty (20) cases of cheese. These goods arrived in St. Thomas in June, 1947, covered by a 30-day sight draft, dated May 20, 1947. This draft, in the amount of $622.60, was accepted by defendant on September 13, 1947. The goods, which were perishable, were never taken from the wharf by the defendant and the money was not paid. Clarence Payne had no general agency for the plaintiff corporation, and it maintained no office and had no capital or business investment in the virgin Islands.

The local Code (1921, Title II, ch. 29, §§ 1, 7; 13 V.I.C. §§ 401, 406) prescribes certain requirements which foreign corporations shall fulfill "before doing business within the district." The law further provides that failure to comply with these provisions shall cause contracts made by such corporations with citizens of this district to be void and unenforceable in any court of the district.

Defendant admits acceptance of the draft, but claims, by way of defense, that he accepted this draft only upon

the representation of one Clarence Payne, styled "agent" of the company, to the effect that he would handle the disposition of the goods. Defendant further claims that the plaintiff corporation is precluded from a judgment in its favor by virtue of section 7, chapter 29, of the above-mentioned Code, which provides that:

"If any foreign corporation or company shall fail to comply with any of the provisions of this chapter, all its contracts with citizens of the district shall be void as to the corporation or company, and no court of the district or of the United States shall enforce the same in favor of the corporation or company so failing."

Sections 1 to 6 enumerate the acts necessary to be done by corporations "before doing business in the District."

It is admitted that plaintiff corporation has not complied with the requirements of the statute for corporations "doing business in the district."

The plaintiff corporation alleges, however, that the transaction was a transaction in interstate commerce; that the Municipal Council had no power to enact legislation which will qualify, impede, or restrain interstate commerce; that the Municipal Council has no power to determine what matters must be or must not be heard by the District Court of the Virgin Islands or by the Federal District Court of the Virgin Islands, and that these provisions of the statute are unconstitutional.

It is, therefore, necessary for us to determine, in the first instance, whether the plaintiff corporation could be said to have been "doing business in the district" within the meaning of the law and, consequently, liable to the penalty for failure to comply with the requirements stipulated by said law. Thus it appears to the Court that the controlling questions presented for determination are as follows:

(1) Whether there was a contract between plaintiff corporation and defendant for the goods and merchandise

and, if so, whether that contract was abrogated by Clarence Payne.

(2) Whether the plaintiff corporation was "doing business in the district"; and whether its failure to comply with sections 1 to 6 of chapter 29 would preclude a recovery.

■-■ As to the first question, delivery of the goods to the defendant's order and acceptance of the draft completed the contract between plaintiff and defendant, and made defendant liable thereon. Clarence Payne denies having made any agreement with the defendant to relieve him of the goods by disposing of them for him, and there is no preponderance of evidence in the record to indicate that he either made any such agreement on behalf of plaintiff, or that he had any such power to do so. Even if he had done so, any such agreement would be strictly between Clarence Payne and the defendant, and could in no way relieve the defendant of liability on the draft accepted by him. There is no evidence that Payne was ever a general agent of Keg and Company, nor that he had any such authority given by Keg and Company. It is further noted that the draft was sent through the bank, and there accepted by the defendant, a direct transaction between plaintiff and defendant. It will be noted that even the power of attorney to Clarence Payne to sue in behalf of Keg and Company was executed long after this contract was made between plaintiff and defendant. It appears that Payne was merely an independent commission agent authorized to take orders for the plaintiff company, among others, which orders had to be submitted to the company in Holland for approval and on which he received a percentage commission. He, therefore, clearly had no power to cancel or vary, by private agreement, a contract entered into by defendant directly with plaintiff corporation.

■ With respect to the second question, two points have been raised by defendant with regard to whether plaintiff was "doing business" here.

First, whether the particular single transaction in issue can be called "doing business within the district"; and

Second, if this particular transaction is not "doing business" here, whether the presence of a salesman representative of the company was sufficient to bring plaintiff within the Act.

There is nothing in the record to indicate the extent or duration of the business alleged by defendant to have been transacted by the plaintiff corporation in the district. And the same can be said here as was observed in Caeser v. Capell, 83 Fed. 403, to wit: "it is stated that it (the foreign corporation) was at that time doing business in the State of Tennessee and County of Heywood in violation of the Acts; but this is only a conclusion of fact or an inference drawn by the pleader and not a statement of any fact itself."

It is generally held that a foreign corporation will not be regarded as doing business within a state or territory because it enters into contracts with residents of the state. Counsel for plaintiff has pointed out that this order for the goods was approved in Holland and the goods consigned there for delivery to the defendant.

■ It is well recognized that an isolated business act or transaction does not ordinarily constitute "the carrying on or doing of business" therein. Cooper Mfg. Co. v. Ferguson, 113 U.S. 727, 58 S. Ct. 739, 28 L. Ed. 1137; Kirven v. Virginia-Carolina Chemical Co., 145 Fed. 288, 76 C.C.A. 172; 12 R.C.L. "Foreign Corporation" - sec. 48.

The transaction in issue was a single, direct order by mail to a company whose place of business is outside the territory. This order was not even placed through Clarence Payne, the resident salesman, and he had nothing to do with its making.

201

■ In Kirven v. Virginia-Carolina Chemical Co., supra, the circuit court discussed in full the various constructions placed upon statutes carrying clauses on "doing, transacting or carrying on business" and concluded that "the great weight of authority is to the effect that isolated transactions, especially commercial, between foreign corporations and citizens of a state, do not constitute a 'doing, transacting or carrying on a business' within the meaning of such statutes using these terms." The court went on to say that "these statutes cannot effect contracts made by a citizen of his state with a foreign corporation, as for instance where an order is sent by the citizen for goods to the foreign corporation, or where such order is taken by a local agent, subject to the approval of the corporation and is approved by the corporation outside the state and the goods are shipped from outside the state by it to the purchaser in the state."

■ The following authorities define and illustrate the essentials required for "doing business" in contemplation of law:

"A corporation is doing business in a state when it transacts therein some substantial portion of its ordinary business, continuous in character as distinguished from merely casual or occasional transactions." Lloyd Thomas Co. v. Grosvenor, 144 Tenn. 347, 233 S.W. 669, 670; Cunningham v. Mellin's Food Co. of North Am., 121 Misc. 353, 201 N.Y.S. 17, 18.

"A foreign corporation which sends its product here for sale through a commission merchant, who transacts the business, makes the sales, and receives the consideration is not 'doing business' in the state." Brookford Mills v. Baldwin, 139 N.Y.S. 195, 197.

"A foreign corporation is not 'doing business' in the state for which General Corporation Law (Consol. Laws, c. 23, sec. 15), requires it to have a certificate, it having in the state no office and no capital invested, but having as a selling agent a commission merchant, under a contract terminable by either party on sixty days notice, who sells goods consigned to him and takes

202

orders, subject to its approval, for other goods, receiving a commission of $10.00 a week, purchasers paying to a bank which remits to the corporation, and the agent warranting the payment of all his sales." Badwiche Lederwerke v. Capitella, 155 N.Y.S. 651, 652.

"The phrase 'doing business in this state' implies continuity of corporate activity, such as might be evidenced by investment of capital within the state with maintenance of office for transaction of business, and such other incidental circumstances attesting corporate intent to avail itself of the privilege to conduct business." Eatonton Cotton Mills v. Goodyear Tire & Rubber Co., 124 Misc. 211, 208 N.Y.S. 218, 220.

"The crucial test in 'doing business' within the meaning of the statute requiring foreign corporations to obtain a license to do business in the state is not shipment of goods from the home office pursuant to orders taken by drummers within the state, but it is the establishment of an agency or branch office within the state limits." Neyens v. Worthington, 150 Mich. 580, 114 N.W. 404, 406, 407, 18 L.R.A. (n.s.) 142, quoting and adopting definition in Vaughn Mach. Co. v. Lighthouse, 64 App. Div. 138, 71 N.Y.S. 799, and citing 19 Cyc. p. 1268.

"A foreign corporation having no place of business in the state, and employing a soliciting agent whose orders are filled by shipment direct to the purchaser from the home office, is not 'doing business' within the state." Saxony Mills v. Wagner & Co., 94 Miss. 233, 47 So. 899, 900, 23 L.R.S. (n.s.) 834, 136 Am. St. Rep. 575, 19 Ann. Cas. 199; William Grace Co. v. Henry Martin Brick Mach. Mfg. Co., 98 C.C.A. 167, 174 Fed. 131, 132.

The courts in New York in construing a statute to the effect that "no foreign corporation, other than a moneyed corporation, shall do business in this state without having first procured from the secretary of the state a certificate that it has complied with all of the requirements of law to authorize it to do business in the state," have held that procuring in New York orders for goods by traveling agents of a foreign corporation which orders are to be transmitted to the home office of the corporation for approval, after which the goods are to be shipped from the home office to the buyer in New York, did not con-

stitute doing business within the meaning of the statute. Murphy Varnish Co. v. Connell, 10 Misc. 553; Tallaposa Lumber Co. v. Holbert, 5 App. Div. 559; Am. Brown & Brush Co. v. Addickes, 19 Misc. 36; National Knitting Co. v. Bronner, 20 Misc. 125, 45 L.R.A. 540.

■ The concept of "doing business within a state" is not altered by the fact that a corporation of another country, instead of another state, is involved. We call attention to the case of Wagner v. J. & G. Meakin, 33 C.C.A. 577, 63 U.S. App. 476, 92 Fed. 76, which is very similar in its facts to the case before us. The defendant in an action by an English corporation to recover for goods sold to defendant set up as a defense that plaintiff had not complied with the statute of the State of Texas requiring corporations doing business in the state to file their articles of incorporation. The court held that the solicitation of orders for goods by the plaintiff through the defendant as its agent was not doing business in the state so as to subject the plaintiff to the local statutory regulation requiring foreign corporations to file a copy of their charter and obtain a permit before engaging in business within the state.

■ Collection of money due on goods ordered and accepted is an integral part of the transaction and has no characteristics which by itself incurs the operation of the law. Sioux Remedy Co. v. Cope, 235 U.S. 195, 59 L. Ed. 193, 14 L.R.A. 529 (note).

Therefore, it is the opinion of the Court that the plaintiff corporation was not doing business in the Virgin Islands within the meaning of the statute, and that there exists a valid contract between the plaintiff and the defendant upon which the plaintiff should recover.

In view of our holding that the plaintiff corporation cannot be said to have been doing business here and that the statute is therefore not applicable, there is no neces-

sity to consider the question of the constitutionality of the statute as raised by counsel.

Decree may be drawn in accordance with this opinion.